Nos. 2012-1334, -1335

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

FRESENIUS USA, INC.
AND FRESENIUS MEDICAL CARE HOLDINGS, INC.,
*Plaintiffs-Appellants*,

*v.*

BAXTER INTERNATIONAL, INC.
AND BAXTER HEALTHCARE CORPORATION,
*Defendants-Cross Appellants.*

Appeals from the United States District Court for the Northern District of California
in case no. 03-CV-1431, Judge Phyllis J. Hamilton

# COMBINED PETITION FOR PANEL REHEARING AND REHEARING EN BANC OF DEFENDANTS-CROSS APPELLANTS BAXTER INTERNATIONAL, INC. AND BAXTER HEALTHCARE CORPORATION

| | |
|---|---|
| CHRISTINA N. GOODRICH<br>K&L GATES LLP<br>10100 Santa Monica Boulevard<br>7th Floor<br>Los Angeles, California 90067<br>Telephone (310) 552-5000<br>Facsimile (310) 552-5001 | MICHAEL J. ABERNATHY<br>SANJAY K. MURTHY<br>DEVON C. BEANE<br>K&L GATES LLP<br>70 West Madison Street<br>Chicago, Illinois  60602<br>Telephone (312) 372-1121<br>Facsimile (312) 827-8000 |

*Attorneys for Defendants-Cross Appellants*

August 1, 2013

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Appellees/Cross-Appellants Baxter International, Inc. and Baxter Healthcare Corporation certifies the following:

1. The full name of every party or amicus represented by me is:

   Baxter International, Incorporated
   Baxter Healthcare Corporation

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   N/A

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   Baxter International, Inc. is the parent of Baxter Healthcare Corporation. No other publicly traded company owns 10 percent or more of Baxter Healthcare Corporation's stock. Baxter International, Inc. has no parent, and no publicly traded company owns 10 percent or more of its stock.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

   Michael J. Abernathy
   Sanjay K. Murthy
   Alan L. Barry
   Brian J. Arnold
   Devon C. Beane
   David Simons
   Christina N. Goodrich
   Michael E. Martinez
   John Wilson
   Adam L. Marchuk (no longer with the firm)
   Lisa A. Carroll (no longer with the firm)
   Gregory P. Sitrick (no longer with the firm)
   Kara F. Cenar (no longer with the firm)
   Erik F. Dyhrkopp (no longer with the firm)
   Thomas L. Gemmell (no longer with the firm)

Wonah Kim (no longer with the firm)
Patrick B. Law (no longer with the firm)
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, IL 60602

Patrick J. Kelleher
Elizabeth Mary Brown
DRINKER BIDDLE GARDNER CARTON LLP
191 North Wacker Drive, Suite 3700
Chicago, IL 60606

Joseph P. Reagen
Thomas S. Borecki (no longer with the company)
BAXTER HEALTHCARE CORPORATION
One Baxter Parkway
Deerfield, IL 60015

Daniel J. Furniss (deceased)
Anne Marie Rogaski
KILPATRICK TOWNSEND & STOCKTON LLP
1080 Marsh Road
Menlo Park, CA 94025

William G. McElwain
Jonathan Cedarbaum
Todd Zubler
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006

William F. Lee
Bharat Ramamurti
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109

Date: August 1, 2013

  /s/ Michael J. Abernathy
Signature of counsel

  Michael J. Abernathy
Printed name of counsel

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF COUNSEL ..................................................................1

INTRODUCTION ...................................................................................2

ARGUMENT ...........................................................................................3

I.  BAXTER'S JUDGMENT IS FINAL AND IMMUNE FROM ATTACK BY THE PTO'S REEXAMINATION DECISION .................3

    A.  This Court Recognized *Fresenius I* Was A Final Judgment ...........3

    B.  The Majority Decision Creates A Circuit Split With *Qualcomm II* ..................................................................................5

    C.  The Majority's View Of Finality Contradicts *King Instrument II* ..................................................................................7

    D.  The Majority's Reliance On Interlocutory, Court-to-Court Decisions Is Misplaced ....................................................................9

II.  THE MAJORITY'S DECISION VIOLATES THE SEPARATION OF POWERS DOCTRINE ....................................................................11

III.  THE CANCELLATION OF CLAIMS IN REEXAMINATION DOES NOT ANNUL BAXTER'S EARLIER JUDGMENT .................12

    A.  Baxter's Entitlement To Damages Springs From The Judgment, Not The Patent ............................................................12

    B.  The Reexamination Statute Fails To Support The Majority ..........13

IV.  THE MAJORITY'S DECISION ELIMINATES CERTAINTY IN LITIGATION AND INCENTIVIZES GAMESMANSHIP ...................14

CONCLUSION ......................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Amado v. Microsoft Corp.*
    517 F.3d 1353 (Fed. Cir. 2008) ..................................................4

*Barnes v. United States*
    678 F.2d 10 (3d Cir. 1982) ........................................................6

*Beatrice Foods Co. v. New England Printing & Lithographing Co.*
    930 F.2d 1572 (Fed. Cir. 1991) ................................................8

*Brown Shoe Co. v. United States*
    370 U.S. 294 (1962)...................................................................7

*Catlin v. United States*
    324 U.S. 229 (1945)...................................................................7

*Freeman Eng'g Assocs. v. FCC*
    103 F.3d 169 (D.C. Cir. 1997)...............................................5, 6

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*
    No. 03-cv-1431, 2007 WL 1655625 (N.D. Cal. June 7, 2007) ....................15

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*
    582 F.3d 1288 (Fed. Cir. 2009) ........................................... passim

*Gould v. Control Laser Corp.*
    705 F.2d 1340 (Fed. Cir. 1983) ..............................................12

*GPX Int'l Tire Corp. v. United States*
    678 F.3d 1308 (Fed. Cir. 2012) ................................................4

*In re Baxter Int'l, Inc.*
    678 F.3d 1357 (Fed. Cir. 2012) .......................................... 1, 4, 11

*In re Baxter Int'l, Inc.*
    698 F.3d 1349 (Fed. Cir. 2012) .............................................2, 4

*James Boyce's Executors v. Grundy*
    34 U.S. 275 (1835)......................................................................4

*Kaufman Co. v. Lantech, Inc.*
    807 F.2d 970 (Fed. Cir. 1986) ................................................12

*Keene Corp. v. United States*
    508 U.S. 200 (1993)..................................................................14

*King Instrument Corp. v. Otari Corp.*
    767 F.2d 853 (Fed. Cir. 1985) ........................................................8

*King Instrument Corp. v. Otari Corp.*
    814 F.2d 1560 (Fed. Cir. 1987) ........................................... 1, 8, 9

*McCullough v. Virginia*
    172 U.S. 102 (1898)........................................................................12

*Mendenhall v. Barber-Greene Co.*
    26 F.3d 1573 (Fed. Cir. 1994) ........................................... 9, 10

*Moffitt v. Garr*
    66 U.S. 273 (1861)........................................................................12

*One Lot Emerald Cut Stones & One Ring v. United States*
    409 U.S. 232 (1972).......................................................................10

*Paice v. Toyota Motor Corp.*
    504 F.3d 1293 (Fed. Cir. 2007) ...................................................3

*Plaut v. SpendThrift Farm, Inc.*
    514 U.S. 211 (1995)............................................................ 1, 5, 11

*Qualcomm Inc. v. FCC*
    181 F.3d 1370 (D.C. Cir. 1999)...............................................5, 6

*Robert Bosch, LLC v. Pylon Mfg. Corp.*
    -- F.3d --, No. 2011-1363, 2013 WL 2664281
    (Fed. Cir. June 14, 2013) (en banc) ....................................... 1, 10

*Seattle Box Co. v. Indus. Crating & Packing, Inc.*
    731 F.2d 818 (Fed. Cir. 1984) ...................................................13

*Simmons Co. v. Grier Bros. Co.*
    258 U.S. 82 (1922)........................................................... 9, 10

*Slip Track Sys., Inc. v. Metal Lite Inc.*
    159 F.3d 1337 (Fed. Cir. 1998) ...............................................12

*Zoltek Corp. v. United States*
    672 F.3d 1309 (Fed. Cir. 2012) ...................................................4

**Statutes**

35 U.S.C. § 252 ............................................................... 13, 14

35 U.S.C. § 283 ....................................................................3

35 U.S.C. § 284 ............................................................. 3, 10

35 U.S.C. § 307 ............................................................................ 13, 14

**Other Authorities**

*Amstar Corp. v. Envirotech Corp.*, Amicus Curiae Br. for the Comm'r of
    Patents & Trademarks
    No. 86-1340, 1986 WL 734249 (Fed. Cir. Nov. 3, 1986) ............................14

*In re Baxter Int'l, Inc.*, PTO Resp. Br. Opp. Reh'g
    No. 2011-1073, 2012 WL 4667630 (Fed Cir. Sept. 10, 2012) ....................2, 4

Raymond A. Mercado, *The Use and Abuse of Patent Reexamination: Sham
    Petitioning Before the USPTO*
    12 Colum. Sci. & Tech. L. Rev. 93 (2011) ..................................................15

Restatement (Second) of Judgments (1982) ...............................................7

Robert A. Pollock, Ph.D. & Anthony H. Sheh, *IP Update:* Fresenius v.
    Baxter—*Timing Matters* (July 9, 2013)
    http://www.finnegan.com/ipupdatefreseniusvbaxtertimingmatters/ .............15

Ryan Davis, *5 New Fed. Circ. Rulings That Will Shape Future IP Cases*,
    Law 360 (July 12, 2013, 9:26 PM)
    http://www.law360.com/articles/456945/5-new-fed-circ-rulings-that-
    will-shape-future-ip-cases/ ..........................................................................14

S. Rep. No. 96-617 (1980) .........................................................................3

## <u>STATEMENT OF COUNSEL</u>

Based on my professional judgment, I believe the panel decision is contrary to the following decisions of the Supreme Court and this Court: *Plaut v. SpendThrift Farm, Inc.*, 514 U.S. 211 (1995); *Robert Bosch, LLC v. Pylon Mfg. Corp.*, -- F.3d --, No. 2011-1363, 2013 WL 2664281 (Fed. Cir. June 14, 2013) (en banc); *In re Baxter Int'l, Inc.*, 678 F.3d 1357 (Fed. Cir. 2012); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288 (Fed. Cir. 2009); and *King Instrument Corp. v. Otari Corp.*, 814 F.2d 1560 (Fed. Cir. 1987).

Based on my professional judgment, I believe this appeal requires an answer to one or more precedent-setting questions of exceptional importance: (1) Whether an affirmed final judgment is immune from attack by a subsequent agency decision; (2) Whether *Fresenius II* vests review of an Article III decision in an Article I administrative agency; (3) Whether cancelling claims in reexamination retroactively nullifies a previously-affirmed damages judgment; and (4) Whether *Fresenius II* impermissibly renders this Court's rulings superfluous, strips patents of their value, and creates an incentive to game the system.

/s/ Michael J. Abernathy
Attorney of Record for Defendants-Cross Appellants

## **INTRODUCTION**

The panel's 2-1 decision is unprecedented. *Fresenius II* is this Court's first published decision holding that the PTO's cancellation of a patent in reexamination retroactively annuls a previously-affirmed judgment from this Court. The majority's decision creates a circuit split, contradicts binding precedent, violates separation of powers, finds no support in the reexamination statute, and encourages litigants to game the system. Not even the PTO supports the majority's holding.[1] Moreover, at least four members of this Court agree that accused infringers cannot use a reexamination to erase prior adverse decisions from this Court.[2]

The majority's ruling would incentivize accused infringers to initiate reexaminations late in litigation, then endlessly extend the proceedings—as Fresenius did here—hoping the PTO will afford them a "second bite at the apple." As a result, *Fresenius II* would eliminate certainty in patent cases. Additionally, if allowed to stand, the majority's decision would result in a flood of new reexamination requests and duplicative litigation in the PTO and courts, the

---

[1]  *In re Baxter Int'l, Inc.*, PTO Resp. Br. Opp. Reh'g, No. 2011-1073, 2012 WL 4667630, at *14 (Fed. Cir. Sept. 10, 2012).

[2]  Judge O'Malley, joined by Chief Judge Rader and Judge Linn, declined to vote for en banc review in *In re Baxter* because the panel opinion made clear that it would not endorse "administrative nullification" of *Fresenius I*. *In re Baxter Int'l, Inc.*, 698 F.3d 1349, 1350 (Fed. Cir. 2012) (O'Malley, J., concurring). In her dissent, Judge Newman agreed. *Id.* at 1351.

opposite of what Congress intended when it passed the reexamination statute.[3]

Because *Fresenius II* could implicate virtually every patent case and dramatically increase the PTO's workload, Baxter requests rehearing en banc.

## ARGUMENT

## I. BAXTER'S JUDGMENT IS FINAL AND IMMUNE FROM ATTACK BY THE PTO'S REEXAMINATION DECISION

The majority's decision stems from the notion that any outstanding issue on remand prevents a judgment from becoming "final," thereby leaving the door open for a subsequent administrative decision to trump this Court's judgment. *See, e.g.*, Maj. at 19, 20, 26. This mistaken premise overlooks that this Court previously acknowledged that Baxter has a final judgment, conflicts with the law of the D.C. Circuit, contradicts the decisions of this circuit, and violates separation of powers.

### A. This Court Recognized *Fresenius I* Was A Final Judgment

*Fresenius I* acknowledged that the district court's judgment was final and affirmed it as to liability, accounting, and entitlement to an injunction and Transition Period royalties.[4] *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d

---

[3]  *See* S. Rep. No. 96-617, at 3 (1980) ("[T]he expectation of the Committee is that the PTO will normally be asked to reexamine patents *before* litigation.") (emphasis added).

[4]  This Court's narrow remand was for possible modification of the post-judgment injunction and Transition Period royalties. *Fresenius I*, 582 F.3d at 1304; *see Paice v. Toyota Motor Corp.*, 504 F.3d 1293, 1314-15 (Fed. Cir. 2007) (post-judgment remedies under § 283 differ significantly from damages under § 284).

1288, 1304 (Fed. Cir. 2009) ("*Fresenius I*").  Fresenius exhausted all possible appeals of that judgment: this Court issued its mandate after denying rehearing en banc and the U.S. Supreme Court denied certiorari.[5]

This Court in *In re Baxter* relied on the finality of *Fresenius I*.  *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1365 (Fed. Cir. 2012).  In fact, describing *Fresenius I* as a "final judgment," the Court recognized that the PTO's subsequent determination would not annul that decision.  *Id.*

Judge O'Malley's concurrence in the denial of rehearing en banc in *In re Baxter* relied on the same premise: that the panel's opinion did not "endorse 'administrative nullification of a *final* judicial decision.'"  698 F.3d at 1350 (O'Malley, J., concurring) (emphasis added).  Even the PTO agreed that the outcome of reexamination would not alter the *Fresenius I* judgment.  *In re Baxter*, PTO Resp. Br. Opp. Reh'g, 2012 WL 4667630, at *14 ("[A] subsequent reexamination decision that the patent is invalid does not disturb the judgment of the court or alter its binding effect on the parties.").[6]

---

[5]   Because the Court issued its mandate in 2009, the majority's reliance on *GPX Int'l Tire Corp. v. United States*, 678 F.3d 1308 (Fed. Cir. 2012), a case where *no* mandate had issued, is flawed.  Maj. at 28.  And that 2009 mandate bars reconsideration of matters resolved in the prior appeal.  *See James Boyce's Executors v. Grundy*, 34 U.S. 275, 290 (1835); *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008).

[6]   *Fresenius II* also conflicts with binding authority by overturning *Fresenius I*.  *See Zoltek Corp. v. United States*, 672 F.3d 1309, 1317-18 (Fed. Cir. 2012).

### B.    The Majority Decision Creates A Circuit Split With *Qualcomm II*

The majority's decision creates a conflict on the conclusive effect of a judgment affirmed on appeal, suggesting that *any* outstanding issue prevents a judgment from becoming "final." *See, e.g.*, Maj. at 19, 20, 26. In *Qualcomm II*, the D.C. Circuit faced the same issue this Court faced in *Fresenius II*, but reached the opposite conclusion. *Qualcomm Inc. v. FCC*, 181 F.3d 1370, 1380 (D.C. Cir. 1999) ("*Qualcomm II*"). Like Baxter, Qualcomm achieved a favorable result in a prior appellate decision, and the case was remanded for further proceedings. *Id.* at 1377; *see also id.* at 1372 (*citing Freeman Eng'g Assocs. v. FCC*, 103 F.3d 169, 180 (D.C. Cir. 1997) ("*Qualcomm I*")). While the case was on remand to the FCC, Congress eliminated the statutory basis to award relief to Qualcomm. *Qualcomm II*, 181 F.3d at 1373-74.

Unlike the majority's decision here, however, the D.C. Circuit held that its prior decision was *not* subject to nullification by another branch. *Id.* at 1380. Relying on *Plaut v. SpendThrift Farm, Inc.*, 514 U.S. 211 (1995), the *Qualcomm II* court refused to reconsider its previously-affirmed judgment based on a change in law, even though the case was remanded to address a remedy issue. 181 F.3d at 1380.

The majority tries to distinguish *Qualcomm II* by suggesting that the mandate there was purportedly narrower because it "was 'not simply for further

proceedings,' but ordered specific, immediate relief for a party." Maj. at 28 n.12. But under the majority's view of finality (that *no* matter can be left open on remand), the breadth or narrowness of a remand would be irrelevant. And as the dissent noted, the mandate in *Qualcomm I* was *broader*; whereas the mandate in *Fresenius I* remanded for determination of only *certain* narrow post-judgment remedy issues (i.e., potential recalculation of limited post-judgment royalties and injunction), the mandate in *Qualcomm I* remanded on the *entire* remedy issue. Dis. at 31-32. Thus, in *Qualcomm II*, issues clearly remained open on remand, as demonstrated by the subsequent appeal following remand. Nevertheless, the D.C. Circuit held that those open issues did not negate the finality of its earlier decision.

*Fresenius II*, by contrast, concludes that *no* appellate decision is final if *any* matter is left to be resolved on remand, no matter how minor. But "[t]hat doctrinaire approach has been rejected throughout the federal system."[7] *See* Dis. at 13-22 (collecting circuit-by-circuit authority regarding finality); *see also Barnes v. United States*, 678 F.2d 10, 13 (3d Cir. 1982) (mandate partially resolving damages issues is final and executable).

The majority's one-sentence quotation to the Restatement (Second) of

---

[7] As the dissent recognized, all other circuits apply preclusion "as the *particular facts* have warranted." Dis. at 16 (emphasis added).

Judgments hardly supports its wooden view of finality.[8]  Maj. at 20.  Rather, the *entirety* of the Restatement undercuts the majority's analysis by recognizing that finality includes prior-adjudicated issues that are "sufficiently firm to be accorded conclusive effect" and "a judgment may be final in a *res judicata* sense *as to a part of an action* although the litigation continues as to the rest."  Restatement (Second) of Judgments § 13(e) (emphasis added).  *Fresenius I*, which conclusively decided infringement, validity and past damages, certainly meets those criteria.

Additionally, the Restatement focuses on court-to-court relations for which a stricter standard of finality is appropriate so as not to prematurely bar subsequent actions.  Importantly, the Restatement does not even envision, let alone address, the question here: whether a previously-affirmed judgment is sufficiently final to preclude retroactive annulment by a subsequent agency decision.[9]

## C.    The Majority's View Of Finality Contradicts *King Instrument II*

The  majority's  notion  that  no  final  judgment  exists  under  these circumstances also contradicts this Court's decision in *King Instrument II*.  *King*

---

[8]    The majority relies on *Catlin v. United States*, 324 U.S. 229, 233 (1945), an appellate jurisdiction case, for the proposition that "final" means nothing left to do but execute on the judgment.  Maj. at 20.  But the Supreme Court has applied a more expansive approach to finality.  *Brown Shoe Co. v. United States*, 370 U.S. 294, 309 (1962) (unresolved remedial measures did not preclude appellate jurisdiction).

[9]    Baxter's judgment "was final in all aspects relevant to the PTO reexamination proceedings" and "[a]ll that remained on remand was an updating of the post-judgment royalty."  Dis. at 24.

*Instrument Corp. v. Otari*, 814 F.2d 1560 (Fed. Cir. 1987) ("*King Instrument II*"). In *King Instrument I*, this Court affirmed the district court's decision on validity, infringement, fees, and damages. *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 868 (Fed. Cir. 1985) ("*King Instrument I*"). It vacated the award on spare parts, however, and remanded for further proceedings. *Id.* Thus, the prior affirmance in *King Instrument I* was nearly identical to the prior affirmance in *Fresenius I. Compare id. with Fresenius I*, 582 F.3d at 1304.

On remand from *King Instrument I*, the district court allowed the patentee to *execute* on the affirmed portion of damages while "defer[ring] for later determination the amount of damages flowing from the sale of spare parts" (i.e., the remanded damages). *King Instrument II*, 814 F.2d at 1562. On appeal, this Court concluded that its previously-affirmed judgment was final, "absolute," and executable, even though it did not resolve all open issues. *Id.* at 1563 (internal citations omitted); *see also Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 930 F.2d 1572, 1577 (Fed. Cir. 1991). Under *King Instrument II*, therefore, outstanding issues concerning post-judgment remedies do not prevent a previously-affirmed judgment from being "final"; if it did, *King Instrument II* could not have permitted execution of that judgment.[10]

---

[10]   Contrary to the majority's suggestion, the denial of Baxter's request to execute on the judgment does not show it was not final. Maj. at 19 n.9. As the Court

### D.    The Majority's Reliance On Interlocutory, Court-to-Court Decisions Is Misplaced

The majority's decision relies primarily on *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573 (Fed. Cir. 1994) and *Simmons Co. v. Grier Brothers Co.*, 258 U.S. 82 (1922).  But these cases are inapposite: neither involved an appeal from a final judgment, a completed accounting, or an administrative agency annulling an Article III court's determination (as *Fresenius II* would allow).

*Mendenhall* and *Simmons* involved the reversal of only *interlocutory* decisions.  The majority states that "nothing in *Mendenhall* suggests that the statutory basis for the [interlocutory] first appeal controlled whether it would be given res judicata effect within the continuing litigation."  Maj. at 25.  But *Mendenhall* actually emphasized that the interlocutory nature of the earlier appeal is dispositive because an "interlocutory appeal is no more final than the appealed decision itself."  *Mendenhall*, 26 F.3d at 1581 ("Thus, the application of collateral estoppel . . . is not precluded by reason of the entry of a final judgment.").  *Simmons* likewise involved review of an interlocutory district court decision, not a final one.  258 U.S. at 89.  As in *Mendenhall*, the interlocutory nature was critical to the holding.  *See, e.g.*, *id.* at 90-91; *see also Mendenhall*, 26 F.3d at 1581.

---

noted in *King Instrument II*, a district court has discretion to order execution or require the posting of a bond; the district court chose the latter and then awarded post-judgment interest accumulated since 2007, which confirms the judgment was effective.  [A00067]; *see King Instrument II*, 814 F.2d at 1563.

The majority also failed to acknowledge that, unlike *Simmons*, the judgment affirmed in *Fresenius I* is indisputably final. At the very least, a judgment is final at the conclusion of an accounting. *Mendenhall*, 26 F.3d at 1581. As confirmed by this Court's recent decision in *Bosch*, an "accounting" includes an infringer's profits and a patentee's damages under 35 U.S.C. § 284. *Robert Bosch, LLC v. Pylon Mfg. Corp.*, -- F.3d --, No. 2011-1363, 2013 WL 2664281, at *5-6 (Fed. Cir. June 14, 2013). Because *Fresenius I* affirmed liability *and* past damages under § 284, Baxter's judgment is final. 582 F.3d at 1300-02.

Additionally, *Mendenhall* and *Simmons* involved court-to-court relations and thus did not address whether an Article I administrative agency—applying a lower standard of proof than an Article III court—can annul a previously-affirmed Article III judgment. *See* Dis. at 25-26. This difference is critical for two reasons. First, the difference in burdens precludes the use of collateral estoppel, which was the procedural vehicle that *Mendenhall* used to overturn the Court's previously-affirmed interlocutory decision. *One Lot Emerald Cut Stones & One Ring v. United States*, 409 U.S. 232, 235 (1972). Second, the interplay between the judicial branch and an administrative agency implicates separation of powers not contemplated by those decisions. *See* Section II, infra. Rather than acknowledge these critical differences, the majority mistakenly equates an Article I administrative proceeding with an Article III judgment. Maj. at 30.

## II.   THE MAJORITY'S DECISION VIOLATES THE SEPARATION OF POWERS DOCTRINE

The reversal of an Article III judgment based on an Article I agency's determination places this Court and the PTO "in conflict with the Constitution." Dis. at 1, 5.  In *Plaut*, the Supreme Court held that "Congress cannot vest review of the decisions of Article III courts in officials of the Executive Branch."  514 U.S. at 218.  Any effort by a coequal government branch to "annul" the decision of the judiciary is "an assumption of judicial power" and thus "forbidden."  *Id.* at 224. As *Plaut* recognized, the Constitution "gives the Federal Judiciary the power, not merely to rule on cases, but to *decide* them."  *Id.* at 218-19 (emphasis in original).

If a PTO reexamination decision can trump ten years of Article III litigation, including affirmance by this Court, then an Article III determination on validity would be merely advisory.[11]  *Fresenius II* therefore conflicts with *Plaut* and, in doing so, the separation of powers doctrine.  The majority opinion likewise contradicts this Court's own decision in *In re Baxter*, which made clear that Article III judgments have primacy over Article I agency determinations.  *See* 678 F.3d at 1365 ("[T]his case is not about the relative primacy of the courts and the PTO, about which there can be no dispute.").

---

[11] The majority side-stepped *Plaut* by concluding that Baxter lacked a "final judgment."  Maj. at 26-29. As discussed above, however, the majority's view of finality creates an inter-circuit conflict and conflicts with binding precedent.

## III.  THE CANCELLATION OF CLAIMS IN REEXAMINATION DOES NOT ANNUL BAXTER'S EARLIER JUDGMENT

### A.  Baxter's Entitlement To Damages Springs From The Judgment, Not The Patent

The majority's discussion of cancellation under the reexamination and reissue statutes focused on Baxter's patent instead of its vested rights in the judgment.  Maj. at 10-17.  Yet as the Supreme Court has recognized, after a patent is cancelled, "[i]t is a mistake to suppose . . . that . . . moneys recovered on judgments in suits . . . might be recovered back.  The title to these moneys does not depend upon the patent, but upon . . . the judgment of the court."  *Moffitt v. Garr*, 66 U.S. 273, 283 (1861); *see McCullough v. Virginia*, 172 U.S. 102, 123-24 (1898) ("It is not within the power of a legislature to take away rights which have been once vested by a judgment.").  Thus, Baxter's private right to past damages springs from the judgment affirmed in *Fresenius I*, not its patent claims.  582 F.3d at 1304. Although the majority acknowledges that "the cancellation of a patent's claims cannot be used to reopen a final damages judgment ending a suit based on those claims," it did not apply this rule based on its view of finality.  Maj. at 18.[12]

---

[12]  None of the cases cited by the majority involved a previously-affirmed district court decision on liability and damages.  *See, e.g.*, *Slip Track Sys., Inc. v. Metal Lite Inc.*, 159 F.3d 1337, 1338 (Fed. Cir. 1998) (on appeal for the first time to determine whether a district court's stay of proceedings pending reexamination was proper); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983) (same); *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 972 (Fed. Cir. 1986)

### B.    The Reexamination Statute Fails To Support The Majority

The majority discusses the history and scope of the reissue statute (§ 252) to interpret the effect of cancellation under the reexamination statute (§ 307).  Maj. at 10-17.  But the majority misreads the text of the reexamination statute, which nowhere provides that the reissue statute impacts *cancelled* claims.

The section of the reexamination statute relied on by the majority (§ 307) contains two subsections: one governing the PTO's issuance of a reexamination certificate after claims are amended, added, confirmed, or canceled in reexamination (§ 307(a)); and the other governing the *effect* of "amended or new claims" after reexamination (§ 307(b)).  Section 307(a) provides that after a reexamination is completed, the Director will issue and publish a certificate either (1) "canceling any claim of the patent finally determined to be unpatentable"; (2) "confirming any claim of the patent determined to be patentable"; or (3) "incorporating in the patent any proposed amended or new claim determined to be patentable."  35 U.S.C. § 307(a).  Section 307(b) then provides that the "proposed amended or new claims[s]" referenced in § 307(a) will have the same effect as reissued claims under the reissue statute (§ 252).  35 U.S.C. § 307(b).

Section 307(b) says *nothing* about *cancelled* claims.  The majority, however,

---

(on appeal for the first time on liability); *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 820 (Fed. Cir. 1984) (same).

reads language into § 307(b), effectively interpreting the statute to say that claims *cancelled* in reexamination are also governed by the reissue statute.  Maj. at 10.  Thus, the majority misreads the plain language of the statute and violates the *expressio unius* doctrine that when a statute expresses one thing, it excludes the other.  *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993).  Moreover, both the reexamination and the reissue statutes are silent on the effect of cancellation on a prior judicial decision.  35 U.S.C. § 307; 35 U.S.C. § 252.[13]

## IV.    THE MAJORITY'S DECISION ELIMINATES CERTAINTY IN LITIGATION AND INCENTIVIZES GAMESMANSHIP

"There are cases that have long-term, real world effects, and Baxter is one of those."[14]    Under the majority's decision, when the PTO cancels a patent after reexamination, a defendant could reopen the judgment if *any* issue remained outstanding.  As a result, *Fresenius II* renders district court judgments affirmed on appeal meaningless until the PTO completes reexamination.  Endorsing such a rule threatens the finality of disputes, discourages settlement, and condones the

---

[13]   "Nowhere in that reexamination legislation does Congress provide that any order of the Commissioner in a reexamination proceeding will operate to vacate, modify, revise or overrule in any manner any order entered by a federal court." *Amstar Corp. v. Envirotech Corp.*, Amicus Curiae Br. for the Comm'r of Patents & Trademarks, No. 86-1340, 1986 WL 734249, at *9-10 (Fed. Cir. Nov. 3, 1986).

[14]   Ryan Davis, *5 New Fed. Circ. Rulings That Will Shape Future IP Cases*, Law 360 (July 12, 2013, 9:26 PM), http://www.law360.com/articles/456945/5-new-fed-circ-rulings-that-will-shape-future-ip-cases (*quoting* Gregory Castanias).

behavior of litigants who, like Fresenius, continually delay proceedings and seek relief in multiple fora to "game the system."[15]  *See Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. 03-cv-1431, 2007 WL 1655625, at *6 (N.D. Cal. June 7, 2007).

The majority's decision also encourages accused infringers to use the reexamination process to re-litigate issues it lost and delay litigation proceedings as long as possible to get their second bite at the apple.[16]  As a result, asserted patents will be "tied up in litigation and reexamination until the patent expire[s]."  Dis. at 8.  Even where defendants initiate reexamination proceedings very late in the litigation, courts will be reluctant to allow litigation to proceed, regardless of the harm caused by prolonged uncertainty regarding a patent that is supposed to be presumed valid.

## CONCLUSION

For the reasons discussed above, this Court should grant Baxter's Petition.

Respectfully submitted,

/s/ Michael J. Abernathy
Michael J. Abernathy

---

[15]  Raymond A. Mercado, *The Use and Abuse of Patent Reexamination: Sham Petitioning Before the USPTO*, 12 Colum. Sci. & Tech. L. Rev. 93, 106 (2011).

[16]  Robert A. Pollock, Ph.D. & Anthony H. Sheh, *IP Update:* Fresenius v. Baxter— *Timing Matters* (July 9, 2013), http://www.finnegan.com/ipupdate freseniusvbaxtertimingmatters/.

**ADDENDUM**

# United States Court of Appeals for the Federal Circuit

———————————

**FRESENIUS USA, INC.,** AND
**FRESENIUS MEDICAL CARE HOLDINGS, INC.,**
*Plaintiffs-Appellants,*

**v.**

**BAXTER INTERNATIONAL, INC.,** AND
**BAXTER HEALTHCARE CORPORATION,**
*Defendants-Cross Appellants.*

———————————

2012-1334, -1335

———————————

Appeal from the United States District Court for the Northern District of California in No. 03-CV-1431, Judge Phyllis J. Hamilton.

———————————

Decided: July 2, 2013

———————————

JUANITA R. BROOKS, Fish & Richardson, P.C., of San Diego, California, argued for plaintiffs-appellants. With her on the brief was MICHAEL E. FLOREY, of Minneapolis, Minnesota.

MICHAEL J. ABERNATHY, K&L Gates, LLP, of Chicago, Illinois, argued for defendants-cross appellants. With him on the brief were SANJAY K. MURTHY and DEVON C. BEANE; and DAVID A. SIMONS, of Boston, Massachusetts.

————————————

Before NEWMAN, DYK, and PROST, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* DYK.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

DYK, *Circuit Judge*.

Appellants Fresenius USA, Inc. and Fresenius Medical Care Holdings, Inc. (collectively, "Fresenius") brought a declaratory judgment action against Baxter International, Inc., and Baxter Healthcare Corporation (collectively, "Baxter"), alleging, inter alia, that claims 26–31 of U.S. Patent No. 5,247,434 ("the '434 patent") were invalid and not infringed. Baxter counterclaimed for infringement. The district court entered judgment against Fresenius, finding the specified '434 claims infringed and not invalid. On appeal, the parties did not contest infringement. We affirmed the determination that the claims were not invalid, but remanded to the district court to reconsider its injunction and post-verdict damages.

While the litigation was pending on remand, the United States Patent and Trademark Office ("PTO") completed a reexamination of the '434 patent and determined that all asserted claims were invalid. We affirmed the PTO's determination in the reexamination proceeding, and our mandate issued. Meanwhile the district court entered judgment against Fresenius in the pending infringement proceedings. Both parties appealed. In light of the cancellation of the asserted claims of the '434 patent, and the fact that the infringement suit remains pending before this court, Fresenius argues that Baxter no longer has a cause of action. We agree. We accordingly vacate the district court's judgment and remand with instructions to dismiss.

## BACKGROUND

The issue in this case is whether the cancellation of the asserted claims of the '434 patent by the PTO, pursuant to the agency's statutory reexamination authority, must be given effect in this pending infringement litigation.

Baxter is the owner of the '434 patent, which is directed to a hemodialysis machine. Hemodialysis machines are used in the place of kidneys to cleanse the blood of toxins. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1291–92 (Fed. Cir. 2009) ("*Fresenius I*"). When a person's blood is pumped through the machine, toxins pass from the blood into a solution called dialysate. The relevant claims of the '434 patent teach the use of a dialysis machine with an integrated touch screen interface. *See* '434 patent col. 40 ll. 29–68.

## I

In 2003, Fresenius, a manufacturer of hemodialysis machines, filed suit in the United States District Court for the Northern District of California seeking declaratory judgments of invalidity and non-infringement with respect to three[1] Baxter patents, including claims 26–31 of the '434 patent, as well as claims of U.S. Patent No. 5,744,027 ("the '027 patent") and U.S. Patent No. 6,284,131 ("the '131 patent"). *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. 03-CV-1431, 2007 WL 518804, at *1 (N.D. Cal. Feb. 13, 2007). Baxter counterclaimed for infringement. *Id.* Following claim construc-

---

[1] The original complaint included two additional Baxter patents, U.S. Patent No. 5,326,476 ("the '476 patent") and U.S. Patent No. 5,486,286 ("the '286 patent"). The Court dismissed all claims concerning the '286 patent in 2006. Baxter dismissed the '476 patent claims from the suit prior to the damages trial.

tion, Fresenius stipulated to infringement of the '434 patent's claims, but asserted that the claims were invalid. *Id.* at *2. A jury returned a verdict in Fresenius' favor, finding the relevant claims of the '434 patent invalid, and also finding certain claims of the '027 and '131 patents invalid. *Id.*

However, in February of 2007 the district court granted Baxter's motion for judgment as a matter of law ("JMOL"), finding that Fresenius had presented insufficient evidence to support the jury's invalidity verdict, and that Fresenius had therefore not proven that the claims of the patents were invalid. *Id.* at *2, *8–13. In October of 2007, the district court proceeded to a jury trial on damages. The jury awarded $14.266 million to Baxter for infringement of the three asserted patents. In April of 2008, the district court entered a permanent injunction, which it stayed, and awarded Baxter ongoing post-verdict royalties on infringing machines and related disposables sold by Fresenius. Both parties appealed to this court.[2]

On September 10, 2009, we reversed-in-part, affirmed-in-part, vacated-in-part, and remanded. *Fresenius I*, 582 F.3d at 1304. We held that the asserted claims of the '027 patent and the '131 patent were invalid, reversing the district court's JMOL decision as to those patents. *Id.* at 1296–1302. However, we agreed that as a matter of law, Fresenius had failed to present sufficient evidence showing that claims 26–31 of the '434 patent would have been obvious. *Id.* at 1302. These claims required a "means for delivering the dialysate to a dialysate com-

---

[2] Fresenius appealed certain of the district court's claim constructions, its grant of JMOL of invalidity, the entry of the permanent injunction, and the royalty award. Baxter cross-appealed the jury's verdict that the claims of the '027 patent, not relevant here, were anticipated. *Fresenius I*, 582 F.3d at 1294.

partment of a hemodialyzer," '434 patent col. 40 ll. 33–35, and Fresenius "failed to present any evidence—let alone substantial evidence—that the structure corresponding to the means for delivering dialysate limitation, or an equivalent thereof, existed in the prior art." *Fresenius I*, 582 F.3d at 1299. We further held that Fresenius failed to present evidence that a structure required by dependent claim 30, a "means for delivering an anticoagulant to a patient," existed in the prior art references. *Id.* at 1300.

We therefore affirmed the district court's grant of JMOL with respect to the claims of the '434 patent, reversed with respect to the other two patents, and vacated the district court's injunction and royalty awards. *Id.* at 1302. We "remand[ed] for the district court to revise or reconsider the injunction in light of our reversal of the district court's grant of JMOL regarding the '027 and '131 patents," and "to consider whether the previous [royalty] award [wa]s proper in light of this court's modification of the district court's judgment." *Id.* at 1303. We noted that, "[i]n particular, . . . our decision . . . may [have] affect[ed] how the district court weighs [the relevant] factors" in determining the royalty award. *Id.*

On remand, Baxter moved for a final decision on the permanent injunction and ongoing royalty. Fresenius responded that no injunction should issue because it was no longer selling infringing machines, and that the amount of the post-verdict ongoing royalties was unreasonable. Fresenius also sought a new trial for pre-verdict damages for infringement of the '434 patent. In May of 2011, the district court denied Fresenius' motion for a new pre-verdict damages trial. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, No. 03-CV-1431, 2011 WL 2160609 (N.D. Cal. May 26, 2011). The district court scheduled further proceedings on the post-verdict royalties, and held an evidentiary hearing in December of 2011. The permanent injunction was no longer an issue at this point because the '434 patent had expired in April of 2011.

6          FRESENIUS USA, INC. v. BAXTER INTERNATIONAL, INC.

On March 8, 2012, the district court awarded Baxter post-verdict damages at a reduced royalty rate. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, No. 03-CV-1431, 2012 WL 761712, at *14–16 (N.D. Cal. Mar. 8, 2012). One week later, on March 16, 2012, the district court entered final judgment for Baxter. J.A. 66–67. The district court ordered Fresenius to pay Baxter $14.266 million plus interest in pre-judgment damages (based on the original jury award), $9.3 million plus interest in post-verdict royalties on infringing machines, additional royalties on related disposables sold prior to the expiration of the '434 patent, and costs. Fresenius appealed, arguing that a new pre-verdict damages trial was required, while Baxter cross-appealed the district court's reduction of the post-verdict royalties. On May 3, 2012, the district court granted Fresenius' motion to stay execution of the new judgment pending this appeal. In granting Fresenius' motion to stay, the court rejected the argument that Baxter was entitled to enforce and execute on the 2007 judgment. The district court explained that "the March 16, 2012 final judgment appears to supercede [sic] the Nov. 7, 2007[,] final judgment." J.A. 995.

II

We now turn to the PTO reexamination proceedings. In 2005, while the district court litigation was pending, Fresenius requested ex parte reexamination of claims 26–31 of the '434 patent, which, as noted, are the only claims remaining in the pending infringement litigation. *See In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1360 (Fed. Cir. 2012), *reh'g en banc denied*, 698 F.3d 1349 (Fed. Cir. 2012).

In January of 2006, the PTO agreed that a substantial new question of patentability had been raised in light of new prior art, and granted the request for reexamination. The reexamination proceeded in parallel with the district court litigation. In December 2006, less than a year before the damages trial, the PTO examiner reached an

initial determination that the claims would have been obvious. In December of 2007, the PTO examiner reached a final determination rejecting claims 26–31 of the '434 patent. The examiner concluded, inter alia, that all structures required by claim 26, including the "means for delivering the dialysate," were present in the prior art, and that the claim would have been obvious. *See Ex parte Baxter Int'l, Inc.*, No. 2009-006493, 2010 WL 1048980, at *5–6, *8–9, *14 (B.P.A.I. Mar. 18, 2010). The examiner reached this conclusion by relying in part on Lichtenstein, a reference that was not before the PTO during the initial examination.[3] The examiner also determined that claim 30 would have been obvious over a combination of references including Lichtenstein and Thompson. Like Lichtenstein, Thompson was not before the PTO during the initial examination. *Ex parte Baxter*, 2010 WL 1048980, at *15, *17. Thus, as we stated in *In re Baxter*, "in this case, the patent examiner relied on new prior art that had not been raised [in the initial examination or] in the prior district court proceeding." 678 F.3d at 1365.[4]

---

[3]  For example, the examiner concluded that "it would have been prima facie obvious . . . to have modified the . . . dialysis machine of Lichtenstein, to utilize a touch screen . . . for delivery of treated or treatment fluids to a patient," and found that "Lichtenstein further evidences that the [prior art machines] are standard variations" on medical devices of the claimed type. Final Office Action in Ex Parte Reexamination, U.S. Pat. No. 5,247,434 (P.T.O. Dec. 14, 2007), at 8, 9.

[4]  Lichtenstein was not presented to the district court in relation to claim 26's "means for delivering dialysate," and the district court's analysis of claim 26 did not discuss Lichtenstein. *See Fresenius*, 2007 WL 518804, at *7–8. Thompson was apparently never presented to the district court at all.

In March of 2010, the Board of Patent Appeals and Interferences affirmed the examiner's determination that the relevant claims would have been obvious in light of prior art overlooked in the initial examination, including Lichtenstein and Thompson. *See Ex parte Baxter*, 2010 WL 1048980. Baxter challenged the examiner's analysis of the prior art, but as the Board noted, Baxter never argued in the reexamination proceeding that Lichtenstein failed to teach the "means for delivering the dialysate" required by claim 26, *id.* at *14, nor that Thompson failed to teach claim 30's "means for delivering an anticoagulant," *id.* at *15, even though those were the very elements of the claims that Baxter had successfully argued were missing from the prior art in the district court infringement litigation.

After the Board denied rehearing, Baxter appealed to this court. We affirmed the PTO's determination that the rejected claims would have been obvious over the prior art. *See In re Baxter,* 678 F.3d at 1366. We explained that this determination was not inconsistent with our holding in the infringement litigation because, unlike the district court in the infringement litigation, the examiner "sufficiently identified the corresponding structure recited in [claim 26 of] the '434 patent," i.e., the means for delivering the dialysate, and could "identif[y] the structures in the prior art" that would have rendered the asserted claims unpatentable. *Id.* at 1364–65. Furthermore, the examiner "based [the] rejections on prior art references that were not squarely at issue during the trial on the invalidity issues, such as Lichtenstein and Thompson." *Id.* at 1365. Rehearing en banc was denied, *In re Baxter Int'l, Inc.*, 698 F.3d 1349 (Fed. Cir. 2012), our mandate issued on November 2, 2012, and Baxter did not petition for certiorari. The PTO terminated the reexamination and issued a certificate cancelling claims 26–31 of the '434 patent. *See* Ex Parte Reexamination Certificate, U.S. Pat. No. 5,247,434 C1 (P.T.O. Apr. 30, 2013).

## III

At various points in the district court infringement litigation, the district court declined to stay the litigation pending the PTO reexamination. In June of 2007, the district court recognized the potential impact of the PTO proceedings on the infringement suit, acknowledging "that the PTO has already made initial, non-final determinations that the subject claims in the patents-in-suit are invalid," J.A. 1015, and stating that "if all the claims are invalidated, as the PTO's initial non-final determinations might imply, there will be no issues to try," J.A. 1012. However, the district court concluded that "it is also possible that the PTO's [initial] determination will have no ultimate bearing on the damages determination in this case, as the PTO's initial actions were non-final and non-binding, and the PTO is free to reconsider its initial determinations." *Id.* Because it was possible that the examiner's determination would change by the time it became final, the district court denied a stay. J.A. 1015. In 2011, the district court again denied a stay, for similar reasons. *See Fresenius*, 2011 WL 2160609, at *1 ("[T]he effect on this litigation of any final action on the reexamined '434 patent is far from clear.").

The issue became central when the district court entered final judgment for Baxter on March 16, 2012, while Baxter's appeal of the PTO's reexamination decision was pending before us. On May 17, 2012, we affirmed the PTO's rejection of the '434 patent's claims in *In re Baxter*. In the present appeal, the parties dispute the effect of the PTO's cancellation of those claims on the infringement litigation, as well as issues related to damages.

We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

As noted earlier, the question in this case is whether, under the reexamination statute, the cancellation of

claims by the PTO is binding in pending district court infringement litigation.

## I

To understand the scope of the relatively recent statutory grant of reexamination authority, it is useful to first review the history and scope of the PTO's reissue authority. This is so because the reexamination statute provides that reexamined claims "have the same effect [in pending litigation] as that specified in § 252 of this title for reissued patents." 35 U.S.C. § 307(b).

The reissue statute, originally enacted in 1832, codified the Supreme Court's holding that even in the absence of a statutory provision authorizing reissue, where an innocent mistake had been made in granting a patent, "[a]ll would admit that a new patent, correcting the error, . . . ought to be issued." *Grant v. Raymond*, 31 U.S. 218, 242 (1832). In the course of the reissue proceeding, "the Patent Office [i]s authorized to deal with all [the patent's] claims . . . and might declare them to be invalid." *McCormick Harvesting Mach. Co. v. C. Aultman & Co.*, 169 U.S. 606, 612 (1898). The patentee was required to surrender the original patent in order to obtain a reissued patent, and the original patent became inoperative.[5]

Prior to 1928, reissuance of a patent extinguished all pending claims based on that patent, because the original patent was "thereby canceled in law." *See* II Anthony W.

---

[5]    The first version of the reissue statute provided that an original patent was surrendered and canceled upon application for reissue. *See generally McCormick*, 169 U.S. 606. The statute was revised in 1870 to provide that surrender and cancellation took place upon completion of the reissue proceeding. *See id.* at 610–12 (holding that if a reissue application is rejected or abandoned, the original claims are not extinguished).

Deller, Walker on Patents § 319 (1937). Supreme Court decisions construing the reissue statute "uniformly held that if a reissue is granted, the patentee has no rights except such as grow out of the reissued patent. He has none under the original. That is extinguished." *Peck v. Collins*, 103 U.S. 660, 664 (1880). Moreover, it was well-established that when a claim was canceled pursuant to reissue, pending suits based on that claim fell. *Moffitt v. Garr*, 66 U.S. 273, 283 (1861). As explained in *Moffitt*,

> in case of a surrender and reissue, . . . the pending suits fall with the surrender. A surrender of the patent to the Commissioner within the sense of the provision, means an act which, in judgment of law, extinguishes the patent. It is a legal cancellation of it, and hence can no more be the foundation for the assertion of a right after the surrender, than could an act of Congress which has been repealed. It has frequently been determined that suits pending, which rest upon an act of Congress, fall with the repeal of it. The reissue of the patent has no connection with or bearing upon antecedent suits; it has as to subsequent suits. *The antecedent suits depend upon the patent existing at the time they were commenced, and unless it exists, and is in force at the time of trial and judgment, the suits fail.*

*Id.* (emphasis added).[6] Thus, under the pre-1928 statute, "[t]he grant of a reissue extinguished all causes of action

---

[6]    The Supreme Court repeatedly applied the *Moffitt* rule after the 1870 statutory amendment mentioned in note 5, *supra*. *See Allen v. Culp*, 166 U.S. 501, 505 (1897) (holding that the original patent "becomes inoperative" on reissue); *Reedy v. Scott*, 90 U.S. 352, 364 (1874) ("[T]he effect of the surrender is to extinguish the patent, and hence it can no more be the foundation for the assertion of a right than can a legislative act which has been repealed

which had arisen under the original patent." P.J. Federico, *Intervening Rights in Patent Reissues*, 30 Geo. Wash. L. Rev. 603, 604–05 (1962); *see also Abercrombie & Fitch Co. v. Baldwin*, 245 U.S. 198, 209–10 (1917) (upon reissuance, a "patentee los[t] all in the way of an accounting under the original patent"); II Anthony W. Deller, Walker on Patents § 319 (1937) (stating that, prior to 1928, "no damages or profits could ordinarily be recovered, for any infringement of a surrendered patent committed prior to its cancellation").

In 1928, Congress crafted an exception to the rule that "all rights [a patentee] had in and under the original patent are forfeited *ab initio* upon the grant of the reissue." S. Rep. No. 70-567, at 1 (1928). Congress amended the reissue statute to authorize actions for infringement of the original claims to continue after reissue, but *only* "to the extent that [the reissued patent's] claims are substantially identical with the original patent." *See* Pub. L. No. 501, 45 Stat. 732, 732 (codified at 35 U.S.C. § 64

---

without any saving clause of pending actions."). In *Meyer v. Pritchard*, 131 U.S. App'x CCIX (1877), the Supreme Court held that the cancellation of a patent mooted the appeal:

> [s]ince the appeal in this case, the appellants . . . have surrendered the patent upon which the suit was brought . . . . If we should hear the case and reverse the decree below, we could not decree affirmative relief to the appellants . . . because the patent upon which their rights depend has been cancelled. There is no longer any "real or substantial controversy between those who appear as parties to the suit" upon the issues which have been joined, and for that reason the appeal is dismissed.

(1928)).    The Senate Report accompanying the 1928 amendment explained that this change was meant

> simply to correct an almost unbelievable and inequitable situation.   Under the present law if a patentee applies for a reissue, no matter for what purpose, all rights he had in and under the original patent are forfeited *ab initio* upon the grant of the reissue.

S. Rep. No. 70-567, at 1 (1928); *see also* H.R. Rep. No. 70-1435, at 1–2 (1928) (similar).

As a result of the 1928 amendment, the reissue statute now states in relevant part,

> every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but *in so far as the claims of the original and reissued patents are substantially identical, such surrender shall not affect any action then pending nor abate any cause of action then existing*, and the reissued patent, to the extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

35 U.S.C. § 252 (emphasis added).  Thus, while

> [p]rior to 1928 one could not recover for past infringement of a reissued patent, even if the claims were unchanged. . . . the 1928 amendment expressly overruled this interpretation, and authorized the reissue of patents to correct errors while enabling recovery for past infringement of claims "identical" to those in the original patent.

*Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1115 (Fed. Cir. 1987).

But the 1928 amendment did nothing to change the rule that suits based on cancelled claims must be dismissed. Upon reissue, original claims that are *not* reissued in identical form became unenforceable. *See Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 976 (Fed. Cir. 1986) ("[T]he patentee has *no* rights [in a non-identical claim] to enforce before the date of reissue because the original patent was surrendered and is dead."); *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 827 (Fed. Cir. 1984) ("The statute does not allow the claims of the original patent some other form of survival. The original claims are dead."). It follows that "[s]urrender of the original patent does not affect any pending action or abate any cause of action to the extent, *but only to the extent*, that the claims of the original and reissue patents are identical." 4A Donald S. Chisum, Chisum on Patents § 15.05 (2013) (emphasis added).

## II

Under the reissue statute, the PTO "had no power to revoke, cancel, or annul" a previously issued patent unless a reissue proceeding had been initiated by the patentee. *McCormick*, 169 U.S. at 612; *see also Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 601 (Fed. Cir. 1985). In 1980, Congress authorized ex parte reexamination to address this deficiency in the reissue statute. *See* Patent Act of 1980, Pub. L. No. 96-517, 94 Stat. 3015 (1980) (codified as amended at 35 U.S.C. §§ 301–307). Like reissuance, ex parte reexamination is a curative proceeding meant to correct or eliminate erroneously granted patents. *See In re Etter*, 756 F.2d 852, 858 (Fed. Cir. 1985) (en banc); *see also In re Freeman*, 30 F.3d 1459, 1468 (Fed. Cir. 1994). Congress subsequently enacted additional provisions authorizing the PTO to conduct inter partes reexaminations, and more recently, inter partes review. *See Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318, 1325 (Fed. Cir. 2013) (discussing inter partes reexamination and inter partes review); Leahy-Smith America

Invents Act ("AIA"), Pub. L. No. 112-29, § 6(a), 125 Stat. 284, 299–304 (2011) (to be codified at 35 U.S.C. §§ 311–319).

The reexamination statute thus authorized the PTO to reconsider patents of "doubtful" validity, and to cancel "defectively examined and therefore erroneously granted patent[s]." *Patlex,* 758 F.2d at 602, 604; *see also In re Swanson*, 540 F.3d 1368, 1378 (Fed. Cir. 2008) (describing "Congress' purpose of allowing for a reexamination procedure to correct examiner errors").

When a claim is determined to be invalid in reexamination, the reexamination statute requires the Director of the PTO to cancel a claim that is "finally determined to be unpatentable":

> In a reexamination proceeding under this chapter, when the time for appeal has expired or any appeal proceeding has terminated, *the Director will issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable*, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable.

35 U.S.C. § 307(a) (emphasis added); *see also* 35 U.S.C. § 306 (providing patentees with appeal rights from any PTO reexamination "decision adverse to the patentability" of one or more claims).

Even if the claim is amended during reexamination to render the claim valid, no suit can be maintained for the period prior to the validating amendment. To ensure that "a person practicing a patented invention would not be considered an infringer for the period between issuance of an invalid patent and its conversion through reexamination to a valid patent," H.R. Rep. No. 96-1307, at 8 (1980), Congress made section 252, which limits the enforcement

of reissued claims, applicable to reexamined claims. *See id*. It did so by enacting section 307(b) of the reexamination statute, which provides that

> [a]ny proposed amended or new claim determined to be patentable and incorporated into a patent following a reexamination proceeding *will have the same effect as that specified in section 252 [35 U.S.C. § 252] for reissued patents* on the right of any person who [infringed] anything patented by such proposed amended or new claim, . . . prior to issuance of a [reexamination] certificate.

35 U.S.C. § 307(b) (emphasis added).

We have accordingly many times held that the reexamination statute restricts a patentee's ability to enforce the patent's original claims to those claims that survive reexamination in "identical" form. *See, e.g., Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997) ("Unless a claim granted or confirmed upon reexamination is identical to an original claim, the patent can not be enforced against infringing activity that occurred before issuance of the reexamination certificate."); *Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413, 1417 (Fed. Cir. 1989) (similar); *Fortel Corp. v. Phone-Mate, Inc.*, 825 F.2d 1577, 1581 (Fed. Cir. 1987) (similar).

As with the reissue statute, the language and legislative history of the reexamination statute show that Congress expected reexamination to take place concurrent with litigation, and that cancellation of claims during reexamination would be binding in concurrent infringement litigation.[7] In *Slip Track Systems, Inc. v. Metal*

---

[7]   *See generally* Mark D. Janis, *Rethinking Reexamination: Toward a Viable Administrative Revocation System for U.S. Patent Law*, 11 Harv. J.L. & Tech. 1, 82 (1997) ("[A] final decision in a reexamination striking down claims binds courts in pending and future litiga-

*Lite, Inc.*, for example, we concluded that the cancellation of claims during reexamination would preclude maintenance of a stayed interference suit involving the same claims. 159 F.3d 1337 (Fed. Cir. 1998). We explained that

> the reexamination, if carried to completion, is likely to result in the cancellation of all of the claims of [Slip Track's] patent [over the interfering patent]. That in turn *will require a dismissal of the interfering patents suit*, since a necessary condition for such an action is the existence of two valid and interfering patents.

*Id.* at 1340 (emphasis added). Likewise, in a stayed infringement proceeding, "if the [patentee's] claims were canceled in the reexamination, [it] would eliminate the need to try the infringement issue." *Id.* at 1342. In either situation, "a necessary condition for such an action is the existence of [a] valid . . . patent[]." *Id.* at 1340; *see also Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) (noting that "[o]ne purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled)"). This effect of the cancellation of a patent pursuant to the statute is "no insult to . . . Article III." *See Patlex*, 758 F.2d at 604. In sum, under either the reissue or reexamination statute, if the PTO confirms the original claim in identical form, a suit based on that claim may continue, but if the original claim is cancelled or amended to cure invalidity, the patentee's cause of action is extinguished and the suit fails.

---

tion."); *see also* Steven M. Auvil, Note, *Staying Patent Validity Litigation Pending Reexamination: When Should Courts Endeavor To Do So?*, 41 Clev. St. L. Rev. 315, 326–37 (1993) (discussing the effect of cancellation, which "renders the claims unenforceable in the pending litigation" (i.e., in concurrent district court suits)).

## III

Baxter wisely agrees that in general, when a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot. However, Baxter argues that the cancellation of the asserted claims cannot be given effect at this point in the present litigation, because the validity of the '434 patent and Fresenius' liability for infringement of that patent were conclusively decided in 2007. Baxter argues that the district court's 2007 judgment is "final" and "binding" on the parties in this case, and therefore has res judicata effect within the pending litigation: "the liability determination and Past Damages Award are now final and Fresenius is precluded from relitigating those issues." Appellee's Br. 19.

Baxter is correct that under "well-established principles of res judicata," *see In re Baxter*, 698 F.3d at 1350–51 (Fed. Cir. 2012) (O'Malley, J., concurring in denial of rehearing en banc), the cancellation of a patent's claims cannot be used to reopen a final damages judgment ending a suit based on those claims. As the Supreme Court's decision in *Moffitt* made clear, "[i]t is a mistake to suppose . . . that . . . moneys recovered on judgments in suits . . . might be recovered back [after a patent is cancelled]. The title to these moneys does not depend upon the patent, but upon . . . the judgment of the court." 66 U.S. at 283; *see also In re Swanson*, 540 F.3d at 1379 n.5 (observing that "an attempt to reopen a final federal court judgment of infringement on the basis of a reexamination finding of invalidity might raise constitutional problems").[8] Fresenius does not argue otherwise.

---

[8]  As previously stated in *In re Construction Equipment Co.*, 665 F.3d 1254, 1256 n.2 (Fed. Cir. 2011), "[w]e express no opinion on whether [an infringer] might or

It is important here to distinguish between different concepts of finality. "Definitions of finality cannot automatically be carried over from appeals cases to preclusion problems." *See* 18A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4432 (2d ed. 2002). We are also not dealing with finality for purposes of determining the potential res judicata effect of this infringement litigation on another suit. We are concerned instead with whether the judgment in this infringement case is sufficiently final so that it is immune to the effect of the final judgment in the PTO proceedings, as affirmed by this court in *In re Baxter*.

In this case, there is no question of reopening a final court judgment, because no such judgment has been entered. To be sure, the district court entered a judgment in November of 2007. But while the district court in 2007 entered a judgment final for purposes of appeal, and that judgment might have been given preclusive effect in another infringement case between these parties, it was not sufficiently final to preclude application of the intervening final judgment in *In re Baxter*, and in any event, we set the district court's judgment aside in the first appeal in the infringement case.[9]  *See Fresenius I*, 582 F.3d at 1302–03.

---

might not be entitled to seek abrogation of [an] injunction" after the underlying patent has been cancelled.

[9]   The district court repeatedly and correctly *rejected* Baxter's post-remand arguments that the November 7, 2007 judgment was final and enforceable. The court refused to authorize execution of the 2007 judgment after remand, denying Baxter's motion to confirm that the 2007 judgment on damages was "final and immediately enforceable," and stating that "there is presently no effective final judgment." *Fresenius USA, Inc. v. Baxter, Int'l, Inc.*, No. 03-CV-1431 (N.D. Cal Sept. 20, 2011), ECF No. 1117.

20          FRESENIUS USA, INC. v. BAXTER INTERNATIONAL, INC.

It is also clear that our remand decision in *Fresenius I* was not sufficiently final to prevent the application of *In re Baxter* in the pending suit. "To rise to that level, the litigation must be entirely concluded so that [the] cause of action [against the infringer] was merged into a final judgment . . . one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Mendenhall v. Barber-Greene Co.,* 26 F.3d 1573, 1580 (1994) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). Our remand to the district court in *Fresenius I* did not end the controversy between the parties, or leave "nothing for the court to do but execute the judgment." To the contrary, we left several aspects of the district court's original judgment unresolved, including royalties on infringing machines, royalties on related disposables, and injunctive relief. Looking to general res judicata principles governing the preclusive effect of a judgment, it is well-established that where the scope of relief remains to be determined, there is no final judgment binding the parties (or the court):

> *Finality will be lacking* if an issue of law or fact essential to the adjudication of the claim has been reserved for future determination, *or if the court has decided that the plaintiff should have relief against the defendant of the claim but the amount of the damages, or the form or scope of other relief, remains to be determined.*

Restatement (Second) of Judgments § 13(b) (1982) (emphases added). "An order that establishes liability but leaves open the question of damages or other remedies . . .

---

In 2012, the district court again refused to authorize execution of the 2007 judgment, stating that it was no longer effective and had been superseded. *See Fresenius Med. Care Holdings, Inc. v. Baxter, Int'l, Inc.*, No. 03-CV-1431 (N.D. Cal. May 3, 2012), ECF No. 1157.

[is] *not final for purposes of preclusion under traditional analysis.*" 18A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4432 (emphasis added) (2d ed. 2002) (citing *G. & C. Merriam Co. v. Saalfield*, 241 U.S. 22, 28, 29 (1916)). "Reversal and remand for further proceedings on the entire case defeats preclusion entirely until a new final judgment is entered by the trial court or the initial judgment is restored by further appellate proceedings." *Id.*

Nor does the existence of an interim appellate decision on invalidity change the basic rule. The Supreme Court's decision in *Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82 (1922), demonstrates that the district court must apply intervening legal developments affecting the asserted patent's validity, even if the court of appeals already decided the validity issue the other way. There, the Third Circuit reversed a district court finding of infringement. *Id.* at 84. The Third Circuit held that the patentee's claim was invalid because it had been improperly broadened on reissue. *Id.* The appellate mandate instructed the district court to modify its decree in accordance with the decision on appeal, and to award costs to the infringer. *Id.* The suit remained pending in the district court for an accounting of damages for unfair competition. While the case was pending, the Supreme Court held in another case involving the same patent, "in direct opposition to the decision of the [Third] Circuit," that the reissued claim was not invalid, because it had not been broadened on reissue. *Id.* at 85. In light of this intervening decision, the district court vacated the invalidity judgment it had entered based on the Third Circuit's decision and awarded the patentee damages and an injunction. *Id.* at 86. But the Third Circuit reversed, holding that the intervening Supreme Court decision did not affect the patentee's rights. *Id.* at 87. The Supreme Court reversed the Third Circuit, holding that the Third Circuit had no basis for refusing to give effect to its inter-

vening decision on the claim's validity, because the appellate mandate had not ended the case.   *Id.* at 91.   The Supreme Court explained,

> [t]he decree entered pursuant to the decision of the appellate court . . . evidenced a quasi-definitive decision adverse to plaintiffs, which, if nothing occurred to prevent, would in due course be carried into the final decree.   But . . . there was nothing to take the case out of the ordinary rule that there can be but one final decree in a suit in equity.

*Id.* at 89.   "[A] final decree [is] one that finally adjudicates upon the entire merits, leaving nothing further to be done except the execution of it."   *Id. at* 88.   Because "[t]he suit was still pending . . . [i]t was eminently proper that the decree in the present suit should be made to conform to [the intervening Supreme Court] decision."   *Id.* at 91; *see also Marconi Wireless Tel. Co. v. United States*, 320 U.S. 1, 47–48 (1943) ("Although the interlocutory decision of [the trial court] on the question of validity and infringement was appealable, . . . the decision was not final until the conclusion of the accounting.   Hence the court did not lack power at any time prior to entry of its final judgment at the close of the accounting to reconsider any portion of its decision and reopen any part of the case." (internal citations omitted)).   Thus, in *Simmons*, even though there had been an appellate decision entirely resolving the patent infringement claims, because there had not yet been a final judgment on the unfair competition claims, the Supreme Court's intervening decision was binding as to the infringement claims.

In *Simmons*, it was the patentee who benefited from the lack of finality, but the same rule applies when the beneficiary is the alleged infringer.   Our decision in *Mendenhall*, 26 F.3d 1573, is on point, and is directly inconsistent with Baxter's argument.   *Mendenhall* holds

that a decision finding a patent not invalid but remanding for further damages proceedings is not a final judgment. In that case Mendenhall had asserted its patents in concurrent suits against two alleged infringers, Cedarapids and Astec. *Id.* at 1576–77. The *Astec* litigation produced a verdict that the patents were not invalid, which this court affirmed on appeal, but we remanded "for determination of damages and other issues." *Id.* at 1576. While *Astec* was pending on remand, the asserted patents were ruled invalid by the district court in the concurrent *Cedarapids* suit. *Id.* at 1577. On appeal in that suit, we "finally adjudged invalid" all asserted claims of both patents; certiorari was denied. *Id.*

When we invalidated the patents in *Cedarapids*, the *Astec* case was still pending before the district court for the determination of damages and other issues. Astec moved to vacate the unfavorable liability judgment in district court, but the district court denied the motion. On appeal from the *Astec* litigation, Astec argued that the *Cedarapids* decision barred Mendenhall from recovering for infringement, because its patents had been invalidated. *Id.* at 1580. Mendenhall argued that we could not give effect to *Cedarapids*' intervening invalidation of the patents, because doing so would conflict with our affirmance and appellate mandate in the first *Astec* appeal. *Id.*

We agreed with Astec and disagreed with Mendenhall. First, we observed that the issue on appeal was not whether the panel decision in *Astec* "should be overturned," but whether Astec could assert a "defense which arose subsequently," that is, that Mendenhall's patents were legally unenforceable. *Id.* We explained that the subsequent invalidation of the asserted patents was a distinct issue not yet considered on appeal, and that our prior mandate in *Astec*

did not rule that the patents were "valid" . . . but rather ruled that Astec failed to establish the merits of its defenses . . . . Thus, this court did not "overturn" its prior Astec rulings respecting validity by the *Cedarapids* judgment of invalidity, and it does not do so here by recognizing the overriding defense of collateral estoppel.

*Id.*

We then rejected Mendenhall's contention that "proceedings here are too far advanced for redetermination of liability." *Id.* We held that because there had been no final judgment in the *Astec* case, we were not barred from applying the *Cedarapids* judgment to the pending appeal:

> the judgment of this court on liability in *Astec* resulted in a remand for further proceedings. It was not the final judgment in the case. To rise to that level, the litigation must be entirely concluded so that Mendenhall's cause of action against Astec was merged into a final judgment.

*Id.* (citing Restatement (Second) of Judgments § 13 (1982)). The invalidation of the asserted patent in the concurrent *Cedarapids* litigation represented "intervening controlling authority," 26 F.3d at 1583, giving Astec an "overriding defense" that the asserted patents were invalid and unenforceable. *Id.* at 1580. In light of that development,

> [f]or this court to affirm the findings of infringement and the willfulness of conduct against one appellant, increase damages against the other, and uphold injunctions against both, appears anomalous in the extreme in connection with patents this court has just held invalid.

*Id.* at 1578. We concluded that "[b]ecause the Mendenhall patents are invalid, the plaintiffs cannot now enjoin or recover damages from these defendants. The liability

judgments together with the awards of damages and the permanent injunctions . . . are reversed." *Id.* at 1584.

This case is virtually identical to *Mendenhall.* The intervening decision invalidating the patents unquestionably applies in the present litigation, because the judgment in this litigation was not final.[10]

Baxter, however, seeks to distinguish *Mendenhall* on the grounds that the first *Mendenhall* appeal was taken as an interlocutory appeal under section 1292(c)(2), whereas the first appeal here was taken under section 1295, which provides for appeals from "final" judgments. *See* 28 U.S.C. § 1292(c)(2) (authorizing interlocutory appeals of final judgments in patent cases); 28 U.S.C. § 1295 (authorizing appeals from "final" judgments). But nothing in *Mendenhall* suggests that the statutory basis for the first appeal controlled whether it would be given res judicata effect within the continuing litigation. To the contrary, the point made in *Mendenhall* was that because there had been no final judgment for res judicata purposes, the patentee was improperly "attempting to invoke a novel kind of *res judicata within* a case." 26 F.3d at 1580–81.

Baxter also argues that *Mendenhall*'s holding should apply only where the patent has been invalidated by a

---

10    *See also Luminous Unit Co. v. Freeman-Sweet Co.,* 3 F.2d 577, 579–80 (7th Cir. 1924) (holding that a district court had to give effect to a cancellation that became effective after the district court entered a decree for the patentee on validity and infringement, but before the entry of final judgment in the suit); *Translogic Tech., Inc. v. Hitachi, Ltd.,* 250 Fed. App'x 988, 2007 WL 2973955 (Fed. Cir. Oct. 12, 2007) (nonprecedential) (reversing district court judgment in favor of the patentee, and remanding for dismissal, in light of our affirmance of the PTO's determination that the claims were invalid).

district court.   Baxter argues that because different standards apply in a PTO reexamination and a validity proceeding before the district court, the patent's invalidation in a reexamination does not have collateral estoppel effect.   But there is no basis for distinguishing between the effects of a final, affirmed court decision determining invalidity and a final, affirmed PTO decision determining invalidity on a pending litigation.   The latter is binding not because of collateral estoppel, but because Congress has expressly delegated reexamination authority to the PTO under a statute requiring the PTO to cancel rejected claims, and cancellation extinguishes the underlying basis for suits based on the patent.

Under Baxter's different standards theory, the cancellation of claims by the PTO could never affect district court litigation, contrary to the statute.   As the Supreme Court held in *Moffitt*, "unless [a patent] exists, and is in force at the time of trial and judgment, the suits fail."   66 U.S. at 283.   Baxter's problem is that it no longer has a viable cause of action in the pending case.

IV

Baxter next argues that under *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995), allowing a PTO determination to control the outcome of pending litigation is unconstitutional, because it offends the separation of powers.   But *Plaut* lends no support to such an assertion where, as here, the suit is not over and there has been no final judgment.

In *Plaut*, the Supreme Court made clear that the power to issue a final judgment and thereby conclusively resolve a case resides in the judicial branch; coordinate branches cannot retroactively compel a case to be reopened.   *Id.* at 218–19.   But *Plaut* also unambiguously stated that

> [w]hen a new law makes clear that it is retroactive, an appellate court *must apply that law in reviewing judgments still on appeal* that were rendered before the law was enacted, and must alter the outcome accordingly.

*Id.* at 226 (emphasis added). Plaut thus recognized "[t]he general rule . . . that an appellate court must apply the law in effect at the time it renders its decision," *Thorpe v. Hous. Auth. of the City of Durham*, 393 U.S. 268, 281 (1969), which is the principle that controls here.[11] The Supreme Court has held that this reasoning applies "where the change [i]s constitutional, statutory, or judicial," because the general principle "applies with equal force where the change is made by an administrative agency acting pursuant to legislative authorization." *Thorpe*, 393 U.S. at 282 (remanding for the application of new rules issued by HUD while the case was pending before the Court). Our decisions giving effect to the PTO's cancellation of claims asserted in pending suits are fully consistent with our duty to "apply the law in effect at the time [we] render[ a] decision." *Bradley*, 416 U.S. at 711. The general principle stated in *Moffitt, Thorpe*, and *Plaut*

---

[11] *See also Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."); *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 711 (1974) (when a case is pending on review "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary"); *id.* at 713 n.17; *Thorpe*, 393 U.S. at 282; *United States v. Schooner Peggy*, 1 Cranch 103, 110 (1801).

controls regardless of whether the plaintiff's cause of action is "extinguished" by the repeal of a statute or by the PTO's cancellation of a claim pursuant to reexamination. *Moffitt* invoked this very principle to explain why pending suits based on cancelled claims must fall:

> [a cancelled patent] can no more be the foundation for the assertion of a right after [its] surrender, than could an act of Congress which has been repealed. . . . [U]nless it exists, and is in force at the time of trial and judgment, the suits fail.

66 U.S. at 283.

It is also quite clear that we have not reached the stage at which *Plaut* precludes reopening a case. We have held that a new statute enacted even after a final decision on appeal is applicable in a pending case, so long as our mandate ending the litigation has not yet issued. *GPX Int'l Tire Corp. v. United States*, 678 F.3d 1308, 1312 (Fed. Cir. 2012) ("Unlike *Plaut*, where Congress attempted to undo a final judgment, this case [i]s still pending on appeal, . . . our mandate ha[s] not yet issued." (internal citations omitted)).[12]   Our sister circuits have done like-

---

[12]   Baxter cites *Qualcomm, Inc. v. FCC*, 181 F.3d 1370, 1380 (D.C. Cir. 1999), for the proposition that a court cannot "reconsider its prior affirmed judgment based on a change in law, even though, like here, the [*Qualcomm*] case was remanded on a remedy issue." Appellee's Suppl. Auth. 1. But *Qualcomm* involved very different circumstances: in that case, the appellate mandate in question was "not simply 'for further proceedings,'" but ordered specific, immediate relief for a party, that is, the judiciary had entered "a final judgment entitling QUALCOMM to a preference." 181 F.3d at 1380 n.7. Because of the finality of the earlier decision, and the legislative history of the intervening legislation, the legislation was construed to be inapplicable.

wise. *See, e.g., Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528–31 (9th Cir. 1989) (vacating a prior mandate in light of superseding legislation, where the current mandate had not yet issued); *T.S. Alphin, Inc. v. Henson*, 552 F.2d 1033, 1034–35 (4th Cir. 1977) (similar). There is no basis to read *Plaut* to impose restrictions on reopening before there has been a final judgment ending the case, that is, "a judicial decision [that] becomes the last word of the judicial department with regard to a particular case or controversy." *Plaut*, 514 U.S. at 227.

Finally, Baxter argues that giving effect to the cancellation in this suit gives the reexamination statute an improperly "retroactive" effect on the enforceability of its patent. According to Baxter, "[i]f Congress intended for affirmed determinations of validity to be set aside . . . it would have drafted the reexamination statute to provide for such a result." Appellee's Br. 24. But it could hardly be clearer that Congress meant for cancellation to terminate pending suits. When it amended the pertinent statutory language in 1928, Congress acknowledged that cancelled claims were void *ab initio*. It did not overrule the application of that principle to cancelled claims, but rather modified the rule to allow continuation of pending suits under circumstances inapplicable here. And in 1980, it made that provision applicable to reexamination.

V

In closing, it is appropriate to say a few words about the dissent, which reiterates a view, expressed by Judge Newman in various other cases, that PTO reexamination cannot affect pending infringement suits. The dissent candidly acknowledges that this position has been consistently rejected.[13] As discussed above, the statute

---

[13]   *See* Dissent at 13; *In re Baxter*, 698 F.3d at 1351 (Newman, J., dissenting from denial of rehearing en banc); *In re Construction*, 665 F.3d at 1257 (Newman, J.,

requires that a final PTO decision affirmed by this court be given effect in pending infringement cases that are not yet final. Baxter, as a general matter, does not argue otherwise. The dissent's claim that the earlier judgment in *Fresenius I* is a final, binding judgment for purposes of res judicata is incorrect, as discussed at length earlier in this opinion.

The dissent, however, cites the Restatement (Second) of Judgments and various cases recognizing that even an interim court decision can have collateral estoppel effect (though it does not operate as res judicata, that is, claim preclusion). The argument appears to be that the PTO was barred from invalidating the claims during reexamination (and that we were in turn barred from affirming the PTO's determination) because the PTO was bound by collateral estoppel arising from the interim decision in *Fresenius I*, which had found the asserted claims not invalid. This identical argument was considered and (properly) rejected in *In re Baxter*. *See* 678 F.3d at 1365; *see also, e.g., Ethicon,* 849 F.2d at 1429 n.3 (holding that "[t]he doctrine of collateral estoppel does not prevent the PTO from completing the reexamination," if a district court finds the patent not invalid).

The argument has even less merit here. Even if collateral estoppel were implicated, both the Restatement and numerous cases have held that an interim decision in one suit (here, *Fresenius I*) cannot prevail over a final judgment on the same issue in another suit (here, *In re Baxter*). *See* Restatement (Second) of Judgments, §§ 14,

---

dissenting); *see also In re Swanson*, 540 F.3d at 1377; *Ethicon, Inc., v. Quigg*, 849 F.2d 1422, 1429 n.3 (Fed. Cir. 1988) ("[A] court's decision upholding a patent's validity is not ordinarily binding on another challenge to the patent's validity, in either the courts or the PTO." (internal citations omitted)).

27 (1982).[14]  That is the explicit teaching of the Supreme Court's decision in *Simmons,* and our decision in *Mendenhall*, discussed earlier.  There is no basis for departing from that established rule.

In light of the cancellation of Baxter's remaining claims, Baxter no longer has a viable cause of action against Fresenius.  Therefore, the pending litigation is moot.  We vacate the district court's judgment and remand with instructions to dismiss.

## VACATED AND REMANDED

### Costs

Costs to Fresenius.

---

[14]    Indeed, even where two *final* court judgments conflict, the settled rule is that the later judgment, not the earlier, has preclusive force going forward.  *See* Restatement (Second) of Judgments § 15 (1982) (Comment (b)); *see also id.* (Comment (c)) (stating that this rule "governs the effect of a judgment by way of merger, bar, or issue preclusion"); *see generally* Ruth B. Ginsburg, *Judgments in Search of Full Faith and Credit: The Last-in-Time Rule for Conflicting Judgments*, 82 Harv. L. Rev. 798 (1969).

# United States Court of Appeals for the Federal Circuit

———————————

**FRESENIUS USA, INC., AND
FRESENIUS MEDICAL CARE HOLDINGS, INC.,**
*Plaintiffs-Appellants,*

**v.**

**BAXTER INTERNATIONAL, INC., AND
BAXTER HEALTHCARE CORPORATION,**
*Defendants-Cross Appellants.*

———————————

2012-1334, -1335

———————————

Appeal from the United States District Court for the Northern District of California in No. 03-CV-1431, Judge Phyllis J. Hamilton.

———————————

NEWMAN, *Circuit Judge*, dissenting.

The court today authorizes the Patent and Trademark Office, an administrative agency within the Department of Commerce, to override and void the final judgment of a federal Article III Court of Appeals. The panel majority holds that the entirety of these judicial proceedings can be ignored and superseded by an executive agency's later ruling.

This holding violates the constitutional plan, for "Judgments, within the powers vested in courts by the Judiciary Article of the Constitution, may not lawfully be revised, overturned or refused faith and credit by another

2          FRESENIUS USA, INC. v. BAXTER INTERNATIONAL, INC.

Department of Government." *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948).

These judicial proceedings started with trial in the district court and the district court's final judgment, then appeal to the Federal Circuit and our appellate final judgment, followed by denial of rehearing and denial of rehearing en banc, followed by issuance of this court's mandate, followed by denial of certiorari.[1]  This court remanded to the district court for the purpose of reviewing post-judgment damages, and the district court did so. That decision is the subject of this appeal.

My colleagues now hold that this entire litigation and decisional panoply is negated by the later decision of the Patent and Trademark Office of the issue of validity.  My colleagues hold that the prior final adjudication by this court of validity and infringement is irrelevant, and that the later decision by the PTO overrides and displaces our prior adjudication, depriving the parties to that adjudication of their binding judgments.

This holding violates the rules of finality, for judgments of Article III courts are "final and conclusive upon the rights of the parties," *Gordon v. United States*, 117 U.S. 697, 702 (1864); *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 226 (1995) (same).

I respectfully dissent.

---

[1]  The panel majority misstates or misunderstands the position of this dissent.  I do not propose that "PTO reexamination cannot affect pending infringement suits," as the majority describes the dissent, maj. op. 29.  I propose that the final decision in a patent infringement suit cannot be overturned by a later decision on reexamination.  I propose that to hold otherwise violates the rules of finality of judgments, and violates the constitutional plan.

I

THE CONSTITUTIONAL PLAN

An agency of the executive branch cannot override or revise or ignore, or deny faith and credit to, the judgment of an Article III court.

> The record of history shows that the Framers crafted this charter of the judicial department with an expressed understanding that it gives the Federal Judiciary the power, not merely to rule on cases, but to *decide* them, subject to review only by superior courts in the Article III hierarchy— with an understanding, in short, that a judgment conclusively resolves the case because a 'Judicial Power' is one to render dispositive judgments.

*Plaut*, 514 U.S. at 218–19 (internal quotations omitted, emphasis in original).

My colleagues hold that a PTO reexamination decision, made after final adjudication of patent validity in the district court and the Federal Circuit, negates the prior judicial decision. However, the constitutional structure does not permit the executive branch to override judgments of the courts. The Constitution "prohibits one branch from encroaching on the central prerogatives of another." *Miller v. French*, 530 U.S. 327, 342 (2000).

This allocation of authority is not casual or perfunctory; it is "an inseparable element of the constitutional system of checks and balances." *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 58 (1982). The Court has explained:

> [T]he doctrine of separation of powers is a *structural safeguard* rather than a remedy to be applied only when specific harm, or risk of specific harm, can be identified. In its major features (of which the conclusiveness of judicial judgments is

4        FRESENIUS USA, INC. v. BAXTER INTERNATIONAL, INC.

> assuredly one) it is a prophylactic device, establishing high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of interbranch conflict.

*Plaut,* 514 U.S. at 239 (emphasis in original).

The issue is not whether patents can be reexamined in PTO proceedings; of course they can. However, the constitutional framework requires that when there has been a prior judicial determination of the issue of patent validity, the conclusiveness of judicial rulings resolves the determination. Adjudications by the Judicial Branch bind all three branches of government. "Congress cannot vest review of the decisions of Article III courts in officials of the Executive Branch." *Plaut*, 514 U.S. at 218.

The reasons are not simply a matter of the neat organization of government. "Article III, §1 preserves to litigants their interest in an impartial and independent federal adjudication of claims within the judicial power of the United States. . . ." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 850 (1986). No statute, no constitutional interpretation, holds that an executive agency is not bound by a judicial decision. The Court reiterated in *Miller v. French*, 530 U.S. at 343, that "an effort by a coequal branch to 'annul a final judgment' is 'an assumption of Judicial power' and therefore forbidden," quoting *Plaut*, 514 U.S. at 224.

The PTO can neither invalidate, nor revive, a patent whose validity the court has adjudicated. Such administrative authority would render the court's judgment no more than "advisory." Article III courts are not permitted to render advisory opinions. *Gordon*, 117 U.S. at 702; *see Sierra Club v. Morton*, 405 U.S. 727, 732 n.3 (1972) ("Congress may not confer jurisdiction on Art. III federal courts to render advisory opinions . . . because suits of this

character are inconsistent with the judicial function under Art. III.").

Article III courts "render no judgments not binding and conclusive on the parties and none that are subject to later review or alteration by administrative action." *Chi. & S. Air Lines*, 333 U.S. at 113–14. This court's ruling places itself and the PTO in conflict with the Constitution. The system of reexamination was designed for a quite different purpose, a purpose that did not incur constitutional conflict.

The purpose of the system of reexamination is to provide a mechanism for remedying errors in the initial PTO examination. During PTO reexamination patent claims can be revised and amended, an action not available in the courts. However, when the issue of validity of the claims has already been resolved in litigation, subsequent redetermination by the PTO is directly violative of the structure of government.

The system of patent reexamination was adopted in order to simplify or avoid litigation, not to increase the litigation burden. At the legislative hearings, Patent Commissioner Diamond explained:

> Reexamination would eliminate or simplify a significant amount of patent litigation. In some cases, the PTO would conclude as a result of reexamination that a patent should not have issued. A certain amount of litigation over validity and infringement thus would be completely avoided.

*Patent Reexamination: Hearing on S. 1679 Before the Senate Comm. on the Judiciary*, 96th Cong. 15–16 (1979) ("*Senate Hearings*").

Reexamination's proponents saw three principal benefits to the pending legislation, as summarized in *Patlex Corp. v. Mossinghoff*, 758 F.2d 594 (Fed. Cir. 1985):

6          FRESENIUS USA, INC. v. BAXTER INTERNATIONAL, INC.

> First, the new procedure could settle validity dis-
> putes more quickly and less expensively than the
> often protracted litigation involved in such cases.

> Second, the procedure would allow courts to refer
> patent validity questions to the expertise of the
> Patent Office. *See Senate Hearings* at 1, wherein
> Senator Bayh said that reexamination would be
> "an aid" to the trial court "in making an informed
> decision on the patent's validity."

> Third, reexamination would reinforce "investor
> confidence in the certainty of patent rights" by af-
> fording the PTO a broader opportunity to review
> "doubtful patents."  126 Cong. Rec. 29,895 (1980)
> (statement of Rep. Kastenmeier).

*Id.* at 602.  Senator Birch Bayh stressed the benefits of
relieving the burdens of litigation on parties and courts:

> Reexamination would allow patent holders and
> challengers to avoid the present costs and delays
> of patent litigation . . . Patent reexamination will
> also reduce the burden on our overworked courts
> by drawing on the expertise of the Patent and
> Trademark Office.

126 Cong. Rec. 30,364 (1980).

The legislative record is extensive, and consistent, on
the purpose of reduction in burden and expense of the
administrative action compared with litigation, by ena-
bling the PTO to correct errors in examination of the
patent.  Representative Hollenbeck testified:

> As a result of the provision for reexamination, the
> potential conflict can be settled by the Patent Of-
> fice itself in far shorter time and at far smaller
> expense to the challenger or to the patent holder
> than would be the case if the only recourse was
> through the court system.

126 Cong. Rec. 29,901 (1980). These goals were again recited in the House Report accompanying enactment of the reexamination statute:

> Reexamination will permit efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation. . . . The reexamination of issued patents could be conducted with a fraction of the time and cost of formal legal proceedings and would help restore confidence in the effectiveness of our patent system. . . . It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner.

H.R. Rep. No. 96–1307(I) at 3–4 (1980), reprinted in 1980 U.S.C.C.A.N. 6460, 6462–63. The entirety of the legislative record stresses reexamination as an alternative to litigation, not a dominating sequel to litigation.

The record shows the concern of the innovation community about the burdens of reexamination proceedings, and apprehension about the tactical opportunities for harassment. Commissioner Diamond responded to these concerns, pointing out the balance of benefits and burdens, and that the reexamination statute

> carefully protects patent owners from reexamination proceedings brought for harassment or spite. The possibility of harassing patent owners is a classic criticism of some foreign reexamination systems and we made sure it would not happen here.

Hearings on H.R. 6933, 6934, 3806 & 215, *Industrial Innovation & Patent & Copyright Law Amendments*, 96th Cong., 2d Sess. 594 (1980).

8        FRESENIUS USA, INC. v. BAXTER INTERNATIONAL, INC.

With this recognition of the potential for abuse, if the proponents of reexamination had expected and intended the tactical gaming and harassment endorsed by the panel majority—such as here illustrated, where the Baxter patent was tied up in litigation and reexamination until the patent expired—surely some mention would have been made of this departure from the simplification and economy for which reexamination was intended. [2]

---

[2] The majority criticizes the district court's denial of Fresenius' request to stay the infringement trial after Fresenius requested reexamination, after receiving an adverse summary judgment of infringement. Maj. op. 9. The majority neglects to mention the district court's concern for Fresenius' abuse of the reexamination process, the district court stating:

> "Parties should not be permitted to abuse the process by applying for reexamination after protracted, expensive discovery or trial preparation." *Freeman v. Minnesota Mining and Manufacturing Co.*, 661 F. Supp. 886, 888 (D. Del. 1987) (citations omitted). To do so would be to allow a party to use reexamination as "a mere dilatory tactic." *Id.*

> It is difficult to imagine a scenario in which a dilatory motive could be more apparent. . . . Fresenius should not have waited until it had had a trial, had litigated motions for judgment as a matter of law and for a new trial on the merits, and *then* had a favorable PTO action to request a stay. Any irreparable harm that Fresenius will suffer will be of its own making, attempting, as it did, to "game the system" by playing both fields simultaneously. . . . [T]o allow Fresenius to now derail this litigation would be to sanction the most blatant abuse of the reexamination process. The express purpose of the reexamination procedure is

Instead, my colleagues announce that "Congress expected reexamination to take place concurrent with litigation, and that cancellation of claims during reexamination would be binding in concurring infringement litigation." Maj. op. 16. No hint can be found in the legislative record for an expectation of concurrent proceedings; no hint of an intent that a PTO reexamination decision would override a prior judicial decision rendered in either prior or concurrent litigation. There is no authority for the majority's creative revision of the historical record.

The panel majority also errs in its understanding of the role of reexamination, which was well understood by the PTO, as stated in an amicus brief filed in response to an Order of the Federal Circuit in pending litigation:

> Indeed, the doctrine of separation of powers clearly prevents any decision of the PTO from having the effect of overturning any decision of the lower court or [the Federal Circuit] respecting the 'validity' of the Eis patent. . . . Nowhere in that reexamination legislation does Congress provide that any order of the Commissioner in a reexamination proceeding will operate to vacate, modify, revise or overrule in any manner any order entered by a federal court. It is axiomatic, in view of the separation of powers doctrine, that a decision of the PTO, as part of the Executive Branch of the government, does not and cannot frustrate or derogate in any way judgments of the courts as part of the Judicial Branch.

---

to shift the burden from the courts by reducing costly and time-consuming litigation.

Order at *6–8, *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, No. 03-CV-1431 SBA (N.D. Cal. June 6, 2007) (citations omitted, emphasis in original).

10      FRESENIUS USA, INC. v. BAXTER INTERNATIONAL, INC.

*Amstar Corp. v. Envirotech Corp.*, Nos. 1986-1340, -1360 (Fed. Cir. 1986), Amicus Curiae Br. for the Comm'r of Patents & Trademarks, 1986 WL 734249, at *9–10.

The reexamination statute does not provide that a PTO reexamination decision will override the judicial decision. It must be assumed that the legislators did not violate the rules of either separation of powers or judicial finality. *See INS v. St. Cyr*, 533 U.S. 289, 300 n.12 (2001) (We must "not lightly assume that Congress intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it."). The role of patent reexamination is not to alter a final adjudication by the courts.

If it were intended that PTO reexamination would override prior judicial decisions, it is inconceivable that no one would have mentioned it in the legislative process. If it were contemplated, through patent reexamination, to negate the "conclusiveness of judicial judgments," *Plaut*, 514 U.S. at 239, this departure from the constitutional plan would have occasioned comment.

My colleagues attempt to avert the constitutional challenge presented by their ruling, by suggesting that here there was no final decision, citing as authority *John Simmons Co. v. Grier Brothers Co.*, 258 U.S. 42 (1922), and *Mendenhall v. Berber-Greene Co.*, 26 F.3d 1573 (Fed. Cir. 1994). These are my colleagues' only authority for their assault on the principles of separation of powers. However, these cases, which relate solely to court-to-court relationships, are irrelevant to the constitutional question of whether an administrative agency can override or ignore a prior judicial decision of the same issue. The issue here presented is not the relationship between different courts, but between the branches of government.

My colleagues endorse administrative abrogation of final judicial decisions, despite the constitutional prohibition as explained from the earliest days of the nation in

*Hayburn's Case*, 2 U.S. (2 Dall.) 408 (1792) (the federal judiciary will not render judgments subject to revision, suspension, modification, or other review by executive or legislative branches). The courts understand this principle of constitutional government, *e.g.*, *Town of Deerfield, N.Y. v. FCC*, 992 F.2d 420, 428 (2d Cir. 1993) ("A judgment entered by an Article III court having jurisdiction to enter that judgment is not subject to review by a different branch of the government. . . ."); *United States v. Johnston*, 258 F.3d 361, 373 (5th Cir. 2001) (Higginbotham, J., concurring) ("It is axiomatic that only an Article III judge can be vested with the power to conduct a dispositive review of the judgment of another Article III court."); *Taylor v. United States*, 181 F.3d 1017, 1024 (9th Cir. 1999) ("Inasmuch as judicial jurisdiction implies the power to hear and determine a case, once court decisions achieve finality they may not be revised, overturned or refused faith and credit by another Department of Government."); *Georgia Association of Retarded Citizens v. McDaniel*, 855 F.2d 805, 810 (11th Cir. 1988) (The principle of separation of powers "protects judicial action from superior legislative review, a regime that would be obviously inconsistent with due process of law and subversive of the judicial branch of government."); *Corbell v. Norton*, 263 F. Supp. 2d 58, 65 n.4 (D.D.C. 2003) ("The appropriations provision at issue attempts to undermine the finality of an order issued by the judicial branch, which may constitute an unwarranted invasion of the authority vested in the federal courts by Article III of the U.S. Constitution.").

By authorizing PTO reexamination to override a prior judicial adjudication of patent validity, this court has created a constitutional violation that should have been avoided. *See NLRB v. Catholic Bishop of Chi.*, 440 U.S. 490, 500–01 (1979) (courts are required to choose any reasonable construction of a statute that would eliminate the need to confront a contested constitutional issue);

*Hooper v. California*, 155 U.S. 648, 657 (1895) (courts must resort to "every reasonable construction . . . in order to save a statute from unconstitutionality").

Here only one constitutionally permissible outcome is available. Just as this court's adjudication of the validity of claims 26–31 of the '434 patent can not be relitigated between Baxter and Fresenius in another court, neither can it be overridden by the PTO on reexamination at Fresenius' initiative. *See Chi. & S. Air Lines*, 333 U.S. at 113; *United States v. O'Grady*, 89 U.S. (22 Wall.) 641, 648 (1874) ("[I]t is quite clear that Congress cannot subject the judgments of the Supreme Court to the re-examination and revision of any other tribunal or any other department of the government.").

## II

### FINALITY

This court's judgment in *Fresenius USA, Inc. v. Baxter International, Inc.*, 582 F.3d 1288 (Fed. Cir. 2009) finally resolved the issue of patent validity. The finality created by judicial decisions is essential to an effective legal system. "It 'has found its way into every system of juris-prudence, not only from its obvious fitness and propriety, but because without it, an end could never be put to litigation.'" *San Remo Hotel. L.P. v. City & Cnty. of S.F., Cal.*, 545 U.S. 323, 336–37 (2005) (quoting *Hopkins v. Lee*, 19 U.S. (6 Wheat.) 109, 114 (1821)). In *Southern Pacific Railroad v. United States*, 168 U.S. 1 (1897) the Court reiterated:

> [A] right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies . . . . This general rule is demanded by the very object for which the civil courts have been established, which is to secure

> the peace and repose of society by the settlement
> of matters capable of judicial determination.

*Id.* at 48–49.  Patent validity is "capable of judicial deter-
mination," *id.*, and validity of the '434 patent was so
determined, by final decision and mandate of this court,
from which certiorari was requested and denied.

Judicial repose is fundamental to a nation governed by
law.  In *Federated Department Stores, Inc. v. Moitie*, 452
U.S. 394 (1981) the Court discussed the public policy
served by finality:

> Public policy dictates that there be an end of liti-
> gation; that those who have contested an issue
> shall be bound by the result of the contest, and
> that matters once tried shall be considered forever
> settled as between the parties.

*Id.* at 401 (citations omitted).  The Federal Circuit has
not been faithful to this principle.  In *In re Construction
Equipment*, 665 F.3d 1254 (Fed. Cir. 2011) this court
upheld the PTO's invalidation based on reexamination of
a patent that had been litigated and held valid eleven
years earlier, the reexamination having been initiated
by a party to the prior litigation.  And in *In re Swanson*,
540 F.3d 1368 (Fed. Cir. 2008) this court upheld the
PTO's invalidation of claims of a patent that had been
held valid by the Federal Circuit in prior litigation,
although the court acknowledged that "an attempt to
reopen a final federal court judgment of infringement on
the basis of a reexamination finding of invalidity might
raise constitutional problems." *Id.* at 1379 n.5.

The loser in this tactical game of commercial ad-
vantage and expensive harassment is the innovator and
the public, for it is now notorious that any invention of
commercial value is ripe for not only protracted litigation
but consecutive reexamination until the patent falls, or
the patent or the patentee expires.  The stability that is

the foundation of the rule of law is lost, along with the patent-supported incentive to create and produce new things to public benefit.

The Court discussed the role of judicial finality in *Southern Pacific Railroad*:

> [E]nforcement [of judicial finality] is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them.

168 U.S. at 49 (citations omitted). The panel majority's holding today violates this "essential" precept, for although the validity of the '434 patent was conclusively adjudicated in the district court and the Federal Circuit, in proceedings in which Fresenius fully participated, my colleagues treat that conclusive adjudication as if it never happened.

In *San Remo Hotel* the Court again reviewed the rule of full faith and credit to judicial rulings:

> The general rule implemented by the full faith and credit statute—that parties should not be permitted to relitigate issues that have been resolved by courts of competent jurisdiction—predates the Republic.

545 U.S. at 336. The issue of validity of Baxter's '434 patent was raised, litigated, and decided, with full participation of the accused infringer; it cannot be relitigated. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 390–91 (1985) ("[A] party is precluded from asserting a claim that he had a 'full and fair opportunity' to litigate in a prior action.").

On enactment of the initial reexamination statute, the PTO embodied the legislative purpose in MPEP §2286 (4th ed. rev.7, July 1981), that

> it is the policy of the Office that it will not "relitigate" in a reexamination proceeding an issue of patentability which has been resolved by a federal court on the merits after a thorough consideration of the prior art called to its attention in an adversary context.

That policy gave way to aberrant guidance from the Federal Circuit, in *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1429 (Fed. Cir. 1988) ("To the extent MPEP § 2286 states that the PTO is bound by a court's decision upholding a patent's validity, it is incorrect."). It is time to restore not only the constitutional obligation, but also the legislative purpose.

The panel majority argues that the rules of finality do not apply here because the Federal Circuit, with its final judgment, included a remand to the district court to assess post-judgment damages. The courts of the nation have dealt with a variety of circumstances in which a final judgment included a remand to the district court. Here, all of the issues on appeal were finally adjudicated by the Federal Circuit; the remand authorized the district court to determine only post-judgment royalties. The remand had no relation to any issue in reexamination; validity had been finally resolved in the courts.

The majority invokes what it calls "traditional" notions of finality, maj. op. 20–21, proposing that "tradition" means that if anything whatsoever remains to be done after final judgment, the final judgment is not final, and any issue of that judgment can be redecided. The majority proposes that the final adjudication of patent validity can be redecided by the courts and thus by the PTO, because of the remand to assess post-judgment damages. This theory is contrary to the precedent of every circuit.

All circuits impose finality and preclusion as to issues that were finally decided in full and fair litigation. The Restatement summarizes the general rule:

> [Preclusion requires] that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered. Thus preclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion.

Restatement (Second) of Judgments §13 cmt. g (1982). The courts often cite the reasoning in *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80 (2d Cir. 1961):

> Whether a judgment, not "final" in the sense of 28 U.S.C. § 1291, ought nevertheless be considered "final" in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. "Finality" in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.

*Id.* at 89.

All of the circuits have applied preclusion and estoppel for issues that were litigated and decided, as the particular facts have warranted. Following is a sampling; starting with the First Circuit, in *O'Reilly v. Malon*, 747 F.2d 820 (1st Cir. 1984) the court stated:

> Whether a judgment, not 'final' in the sense of 28 U.S.C. § 1291, ought nevertheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review.

*Id.* at 822–23 (quoting *Lummus Co.*, 297 F.2d at 89).  The Second Circuit in *Zdanok v. Glidden Co.*, 327 F.2d 944 (2d Cir. 1964) stated that

> collateral estoppel does not require a judgment which ends the litigation and leaves nothing for the court to do but execute the judgment, but includes many dispositions which, though not final in that sense, have nevertheless been fully litigated.

*Id.* at 955 (citations omitted).

The Third Circuit, applying these principles, explained that issue preclusion is a "pliant" concept, as in *Henglein v. Colt Industries Operating Corp.*, 260 F.3d 201 (3d Cir. 2001):

> Preliminarily, we observe that much of the Plans' argument rests upon a concept of "finality" that is unduly rigid.  In *Dyndul v. Dyndul*, 620 F.2d 409 (3d Cir. 1980) (per curiam), we commented that finality for purposes of issue preclusion is a more "pliant" concept than it would be in other contexts.

*Id.* at 209–10 (citations omitted).

When an issue has been finally decided it cannot be reopened, although other issues remain open.  The Fourth Circuit, in *Swentek v. USAIR, Inc.*, 830 F.2d 552 (4th Cir. 1987), stressed the common sense of issue preclusion and collateral estoppel:

> We do not think the trial judge was required to di-
> rect entry of judgment under Rule 54(b) and await
> the appeal of Swentek's privacy and battery
> claims before assigning the prior jury determina-
> tions preclusive effect . . . . Finality for purposes
> of collateral estoppel is a flexible concept and
> "may mean little more than that the litigation of a
> particular issue has reached such a stage that a
> court sees no really good reason for permitting it
> to be litigated again."

*Id.* at 561 (citations omitted).

In *Pye v. Department of Transportation of Georgia*, 513 F.2d 290, 292 (5th Cir. 1975) the Fifth Circuit reject-ed the argument that a state court judgment "is not final and therefore cannot be res judicata, since the amount of compensation has not been determined," stating: "To be final a judgment does not have to dispose of all matters involved in a proceeding" (citations omitted). The court in *Pye* held that lack of determination of the amount of compensation does not negate finality for purposes of preclusion. *Id.* Analogy may be drawn to determination of the royalty for Fresenius' post-judgment infringement.

In *Employees Own Federal Credit Union v. City of De-fiance*, 752 F.2d 243 (6th Cir. 1985), the Sixth Circuit stated:

> [F]or purposes of issue preclusion (as distin-
> guished from merger and bar), "final judgment"
> includes any prior adjudication of an issue in an-
> other action that is determined to be sufficiently
> firm to be accorded conclusive effect.

*Id.* at 245 (citation omitted). The court, in discussing "general principles of res judicata," stated that an "ad-verse judgment" following a "full and fair opportunity to litigate" is preclusive; "[o]ne bite at the apple is enough." *Id.*

The Seventh Circuit in *Miller Brewing Co. v. Joseph Schlitz Brewing Co.*, 605 F.2d 990 (7th Cir. 1979), agreed that collateral estoppel does not require §1291 finality:

> To be "final" for purposes of collateral estoppel the decision need only be immune, as a practical matter, to reversal or amendment. "Finality" in the sense of 28 U.S.C. §1291 is not required.

*Id.* at 996. The Eighth Circuit in *Robinette v. Jones*, 476 F.3d 585 (8th Cir. 2007) found finality for issue preclusion purposes where the quantum of damages had not yet been determined, the court stating:

> [T]he finality requirement for issue preclusion has become less rigorous. Recent decisions have relaxed traditional views of the finality requirement in the collateral estoppel context by applying the doctrine to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief, let alone enforced.

*Id.* at 589 (citation omitted).

In *John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers*, 913 F.2d 544 (8th Cir. 1990), the court held that preclusion can apply "to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief." *Id.* at 564 (citation omitted). The court observed that "[b]oth parties presented abundant evidence on the issue at trial, and both had strong incentives to litigate the issue fully. Furthermore, the jury's verdict addressed the exact issue which the arbitrator chose to reconsider." *Id.*

So it is here. Fresenius and Baxter both had "strong incentives to litigate" validity, and did so through trial and appeal. The district court's judgment and our judgment on appeal "addressed the exact issue which the

20        FRESENIUS USA, INC. v. BAXTER INTERNATIONAL, INC.

[PTO] chose to reconsider." The PTO cannot override this court's judgment, although post-judgment damages remained to be resolved.

The Ninth Circuit in *Syverson v. International Business Machines Corp.*, 472 F.3d 1072 (9th Cir. 2007) held that preclusion arose as to issues that were finally decided, although other aspects of the merits had been remanded:

> [T]he proper query here is whether the court's decision on the issue as to which preclusion is sought is final.

*Id.* at 1079 (internal citation omitted). *See Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 330 (9th Cir. 1995) ("Where the plaintiffs have had a full and fair opportunity to actually litigate the issue and did in fact litigate it, they cannot ordinarily be prejudiced by subsequently being held to the prior determination.").

The Tenth Circuit in *Smith Machine Co. v. Hesston Corp.*, 878 F.2d 1290, 1293 (10th Cir. 1989) discussed the "conclusive effect" as to the "specific issue" for which estoppel or law of the case preclusion was sought:

> Courts also require a prior final judgment, at least on the specific issues sought to be foreclosed from relitigation, before a party may invoke collateral estoppel or law of the case.

*Id.* at 1293 (citing *Employees Own*, 752 F.2d at 245 ("relaxation of final judgment rule in collateral estoppel context appropriate in civil case when prior decision is 'sufficiently firm to be accorded conclusive effect.'")).

The Eleventh Circuit in *Christo v. Padgett*, 223 F.3d 1324 (11th Cir. 2000) mentioned the "widely recognized" rule of issue preclusion:

> The Christos argue that the July 13 order cannot have preclusive effect because it was not a final

> judgment. Technically, the Christos' assessment of the July 13 order is correct . . . . [However] [i]t is widely recognized that the finality requirement is less stringent for issue preclusion than for claim preclusion.

*Id.* at 1338–39 (citations omitted).

The D.C. Circuit in *Martin v. Department of Justice*, 488 F.3d 446 (D.C. Cir. 2007) discussed issue preclusion based on a district court's adjudication:

> It is well established that a lower court judgment may have preclusive effect despite the lack of appellate review. "For purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."

*Id.* at 455 (citations omitted, ellipse in original).

All of the circuits follow this approach, as did the Federal Circuit. In *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132 (Fed. Cir. 1985) this court stated:

> Considering the finality issue, for collateral estoppel to arise the prior decision need not have been final in the sense of 28 U.S.C. § 1291 but, in the words of the Restatement, the prior adjudication must have been "sufficiently firm to be accorded conclusive effect."

*Id.* at 1135.

In *Block v. U.S. International Trade Commission*, 777 F.2d 1568 (Fed. Cir. 1985) this court summarized the criteria for purposes of issue preclusion:

> One important factor that is considered in determining the finality of a decision for the purposes of preclusion is whether the decision was ever

subject to appeal.  In *Lummus Co.*, 297 F.2d at 89, Judge Friendly stated that whether a "non-final" judgment "ought nonetheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review."

*Id.* at 1571–72 (citations omitted).

Despite this heavy and uniform weight, my colleagues insist that no appellate judgment is final as to any issue finally decided, if there is a remand on a different aspect of the case.  That doctrinaire approach has been rejected throughout the federal system, and explicitly with respect to damages, for post-judgment damages was the issue here on remand.[3]

---

[3]    My colleagues seek support in the Restatement (Second) of Judgments, maj. op. 30–31, but there is none to be found.  Both provisions cited (but not quoted) by the panel majority state the principle, universally understood, that "when two actions are pending which are based on the same claim, or which involve the same issue, it is the final judgment first rendered in one of the actions which becomes conclusive in the other action."  Restatement (Second) of Judgments §14 cmt. a (1982); *see* §27 cmt. l ("If two actions which involve the same issue are pending between the same parties, it is the first final judgment rendered in one of the actions which becomes conclusive in the other action, regardless of which action was brought first.").  The "final judgment first rendered" in this matter is the final judgment of validity and infringement rendered in 2009, *see Fresenius I.*  That final judgment is "conclusive."  §14 cmt. a; §27 cmt. l.  That is the final judgment that the court now holds is negated by the later ruling of the administrative agency.

Finality for preclusion purposes when the issue of damages remained for determination, has been considered in several factual contexts, as discussed *supra*. In *Zdanok* the court stated that "[t]he mere fact that the damages of the [first] plaintiffs have not yet been assessed should not deprive that ruling of any effect as collateral estoppel it would otherwise have," for the decision was "final on the hotly contested issue of liability." 327 F.2d at 955. *See also, e.g.*, *Metromedia Co. v. Fugazy*, 983 F.2d 350 (2d Cir. 1992):

> The mere fact that the damages awarded to the plaintiff have not been yet calculated, though normally precluding an immediate appeal, . . . does not prevent use of a final ruling on liability as collateral estoppel.

*Id.* at 366 (citation omitted); *In re Docteroff*, 133 F.3d 210, 215–16 (3d Cir. 1997) ("[A]pplication of collateral estoppel does not require the type of finality urged by Docteroff . . . . The [prior] judgment is sufficiently final. Indeed, there is nothing which would even suggest that that court has any intention of revisiting the issue of liability, that its findings are unreliable" although a "trial on damages" had yet to occur.); *In re Nangle*, 274 F.3d 481, 484–85 (8th Cir. 2001) (collateral estoppel may apply "to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief, let alone enforced"); *B. Willis, C.P.A., Inc. v. BNSF Ry. Corp.*, 531 F.3d 1282, 1301 n.24 (10th Cir. 2008) ("While the entire eminent domain proceeding is not yet final, because the state courts are still considering the amount of compensation to which Willis is entitled for the easement, that fact is of no moment [to the preclusion analysis] because the claims that Willis asserts in this federal action do not implicate the adequacy of the compensation award.").

Here, Fresenius contested liability and lost, by declaratory action brought in the district court, and on appeal to the Federal Circuit. All that remained on remand was an updating of the post-judgment royalty. The judgment of validity of the '434 patent was not subject to redetermination, and was final in all aspects relevant to the PTO reexamination proceedings. The remand for post-judgment royalty had no impact on patent validity.

The panel majority states that this court's final judgment of validity and infringement, including damages to the date of judgment—adjudged by this court in 2009—was not "final" because the district court declined to grant Baxter's motions for execution of past damages during the remand for determination of post-judgment damages. On Baxter's first motion, filed on August 16, 2011, the district court explained that the motion was "premature" because Fresenius had requested a new trial on past damages and the court had scheduled a hearing on this issue for December 2, 2011. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, No. 03-CV-1431 (N.D. Cal. Sept. 20, 2011), ECF No. 1117. The district court denied Fresenius' motion for a new trial on past damages, stating "Nothing in the mandate in this case indicates that damages for infringement was an issue for remand." Order at *4, *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, No. 03-CV-1431 PJH, 2011 WL 2160609 (N.D. Cal. May 26, 2011). Neither validity nor infringement was involved in this motion for a new trial.

After the district court adjudicated the post-judgment royalties on remand, Fresenius filed the appeal now before us, on this question, and requested that execution be delayed during the appeal, offering to file a supersedeas bond. Meanwhile, the patent had expired. The district court accepted the bond offer, and stayed execution of the judgment pending appeal. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, No. 03-CV-1431 (N.D. Cal. May 3, 2012), ECF No. 1157. None of these events overtook this

court's final adjudication of validity and infringement in 2009. These aspects were not at issue in the remand.

The panel majority irrelevantly states that "[r]eversal and remand for further proceedings on the entire case defeats preclusion entirely until a new final judgment is entered by the trial court or the initial judgment is restored by further appellate proceedings," citing *G. & C. Merriam Co. v. Saalfield*, 241 U.S. 22, 28, 29 (1916). There was no "reversal and remand for further proceedings on the entire case," *id.* Validity, infringement, and pre-judgment damages were finally decided, and were neither reversed nor remanded; the remand related only to post-judgment remedy.

The Federal Circuit's final judgment in 2009 was not "an interim appellate decision on invalidity," maj. op 21; it was the final decision of validity and infringement. These issues received no further attention, on denial of certiorari. Validity was finally adjudicated, and finally resolved. The judgment of validity is binding not only on the courts and the parties, but also on the PTO.

As mentioned *supra*, the majority relies on *John Simmons Co. v. Grier Brothers Co.*, 258 U.S. 82 (1922) and *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573 (Fed. Cir. 1994). *Simmons* is inapposite, and *Mendenhall* relates to litigation in the courts.

*Simmons* concerned a reissue patent in which there were conflicting decisions by the Third Circuit and the Supreme Court on the same patent, and the district court, which on remand was assessing damages on an unrelated unfair competition claim, chose to follow the Supreme Court on the patent question and thus vacated its own prior decision. The Supreme Court approved, commenting that final judgment had not been reached.[4] *Simmons*

---

[4] The *Simmons* court ruled that there "was not a final decree" because "[t]he prayer for relief based upon

26        FRESENIUS USA, INC. v. BAXTER INTERNATIONAL, INC.

raises an interesting question of the relationships among the courts, and stands alone on the generalization for which it is cited by my colleagues. *Simmons* does not hold that executive branch agencies are not required to respect a final judicial decision of the same issue.

*Mendenhall*, too, concerns court-to-court relationships. *Mendenhall*'s statement that "the decision was not final until the conclusion of the accounting," 26 F.3d at 1581, neither bars issue preclusion, nor relieves the PTO of its obligation to separation-of-powers principles.

We need not here explore all of the possible circumstances and relationships in which questions of preclusion might arise. It cannot be debated that issue preclusion can apply although other issues may be unresolved. The Court has explained that both fairness to litigants and judicial economy are served by precluding the relitigation of matters that have been fully litigated, *see Taylor v. Sturgell*, 553 U.S. 880 (2008):

> By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines [of claim and issue preclusion] protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Id.* at 892 (citations omitted).

---

infringement of patent and that based upon unfair competition in trade were but parts of a single suit in equity" and "there can be but one final decree in a suit in equity." 258 U.S. at 89. *But see* 1938 Fed. R. Civ. Pro. (Rule 2) (abolishing the distinction between suits at law and equity).

The only issue considered on PTO reexamination is patent validity. However, here validity of the Baxter patent claims at issue had already been finally decided in litigation between Baxter and Fresenius. "Once a judicial decision achieves finality, it 'becomes the last word of the judicial department.'" *Miller*, 530 U.S. at 344 (quoting *Plaut*, 514 U.S. at 227). As stated in *Clements:*

> Vindication of this public interest is at its zenith in the realm of issue preclusion. It is the failure to adhere closely to basic issue preclusion that is most likely to lead directly to the inconsistent results that tend to undermine confidence in the judicial process.

69 F.3d at 330. My colleagues err in discarding these venerable considerations.

The great weight of jurisprudence and the Constitution-based proscription of executive override of judicial decision negate the panel majority's relapse into "tradition." Separation-of-powers and the principles of preclusion are not contrary to tradition.

### III

### OTHER ARGUMENTS

### A. The Mandate Rule

Baxter's '434 patent was issued on September 21, 1993. In 2003 Fresenius filed a declaratory judgment action, seeking declaration of invalidity and non-infringement of three Baxter patents including claims 26–31 of the '434 patent. That suit proceeded through discovery, motions, trials, and decision. On February 13, 2007 the district court entered final judgment that the three Baxter patents are valid and infringed, and assessed damages to the date of judgment. The district court's final judgment is reported at *Fresenius USA, Inc.*

*v. Baxter International, Inc.*, No. 03-CV-1431 SBA, 2007 WL 518804 (N.D. Cal. Feb. 13, 2007).

On appeal, the Federal Circuit ruled on September 10, 2009 that claims 26–31 of the '434 patent are valid and infringed, and that the two other Baxter patents in suit are invalid. The court remanded to the district court to assess post-judgment remedy. The mandate issued on November 25, 2009. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288 (Fed. Cir. 2009).[5]

In 2005 Fresenius had filed with the PTO a request for reexamination of the '434 patent. Fresenius cited references and provided argument that claims 26–31 are invalid on the ground of obviousness. On March 18, 2010—nearly four months after our mandate issued—the PTO Board of Patent Appeals and Interferences held that claims 26–31 of the '434 patent are invalid. This decision was appealed to the Federal Circuit, and this court affirmed. This court justified its conflict with its 2009 decision by stating that it was applying different standards of review—although obviousness is a question of law. That mandate issued on November 2, 2012. *In re Baxter Int'l, Inc.*, 679 F.3d 1357 (Fed. Cir. 2012); *reh'g en banc denied*, 698 F.3d 1349 (Fed. Cir. 2012).

The panel majority incorrectly states that: "We affirmed the PTO's determination in the reexamination proceeding and our mandate issued. Meanwhile the district court entered judgment against Fresenius in the pending infringement proceedings." Maj. op. 2. That is

---

[5]    On remand, the district court declined to stay the damages proceeding until completion of the ongoing PTO reexamination; the court stating that "the effect on this litigation of any final action on the reexamined '434 patent is far from clear." Order at *2, *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, No. 03-CV-1431 PJH, 2011 WL 2160609 (N.D. Cal. May 26, 2011).

incorrect.  The infringement proceedings were over in the district court and on appeal to the Federal Circuit, including petitions for rehearing and for certiorari.  The Federal Circuit's final judgment and mandate issued in 2009.  There were no infringement proceedings pending when we affirmed the PTO's reexamination decision in 2012; and that affirmation makes no mention of any pending infringement proceeding.

The remand to assess post-judgment royalty did not affect the final adjudication of validity.  When validity was finally decided by the Federal Circuit in 2009, this was "the last word of the judicial department with regard to [the] particular . . . controversy."  *Plaut*, 514 U.S. at 227.  When the mandate includes a remand to consider a specific issue, other issues cannot be reopened.  *See, e.g.*, *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008) (on any subsequent appeal in the same case, "any issue within the scope of the judgment [previously] appealed from—not merely those issues actually raised—" cannot be reconsidered); *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999) ("[I]ssues actually decided—those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court—are foreclosed from further consideration."); *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 951 (Fed. Cir. 1997) ("Upon return of its mandate, the district court cannot give relief beyond the scope of that mandate.").

The district court so recognized, and after our remand to determine post-judgment damages, the district court rejected Fresenius' request to reopen the entire issue of damages, stating: "Nothing in the mandate in this case indicates that damages for infringement was an issue for remand, and nothing suggests that this court should consider new evidence."  Order at *4, *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, No. 03-CV-1431 PJH, 2011 WL 2160609 (N.D. Cal. May 26, 2011).  *See Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939) (an appellate court's

"mandate is controlling as to matters within its compass").

## B.  The Flawed Statutory Analogy

My colleagues now reject the mandate rule, the rules of issue preclusion and estoppel, and all other rules of finality, stating the position that since the matter of post-judgment royalty was receiving attention on remand, there is no finality, and thus no obligation on the PTO to respect finality of adjudication.  In support of this theory my colleagues draw analogy to statutory change, stating that "We have held that a new statute enacted even after a final decision on appeal is applicable in a pending case, so long as our mandate ending the litigation has not yet issued." Maj. op. 28.  The majority cites *GPX International Tire Corp. v. United States*, 678 F.3d 1308, 1312 (Fed. Cir. 2012) as authority for the argument that a PTO reexamination decision is like a newly enacted law, and overrides a prior final judicial determination.

I again note that the mandate ending this litigation had indeed issued—contrary to the majority's statements. *GPX Tire* supports not my colleagues' argument, but the contrary position.  In *GPX Tire* the court confirmed that after the mandate has issued the court's decision is final, and is not subject to the "new statute," whatever the content of the new statute.  *Id.* at 1310.

As discussed in *Qualcomm Inc. v. FCC*, 181 F.3d 1370 (D.C. Cir. 1999), after a final judgment has been rendered, that judgment cannot be altered by legislative change, even if an aspect of the case was pending on remand when the legislation was enacted.  The *Qualcomm* court explained that allowing newly enacted legislation to disturb a court's decision would "pose a constitutional question of whether Congress could change the result of a final judicial decision." *Id.* at 1375 (citing *Plaut*, 514 U.S. at 240).

The *Qualcomm* court elaborated that "the separation of powers doctrine embedded in the Constitution protects the final judgments of Article III courts from legislative interference," *id.* at 1379; the court warning that: "By passing retroactive legislation affecting a case already finally adjudicated, Congress had circumvented the fundamental principle that the judicial power includes the authority to render dispositive judgments, and had thus violated the principle of separation of powers." *Id.* (citations omitted).

The separation of powers doctrine protects judicial rulings, and the public, from executive as well as legislative interference. The panel majority attempts to blunt the force of the *Qualcomm* reasoning, arguing that in *Qualcomm* "the appellate mandate in question was not 'simply for further proceedings,' but ordered specific, immediate relief for a party." Maj. op. 28 n.12. The remand in *Qualcomm* instructed the FCC to conduct further proceedings to determine whether to grant Qualcomm a "pioneer's preference" and to identify any "alternative relief." *Id.* at 1377. This "vague" remand instruction "recognized that alternative relief remained to be identified. . . ." and did not decide the issue of Qualcomm's preference "per se." *Id.*

Similarly, the remand in our *Fresenius* decision was not for generalized further proceedings in the district court; the remand was specifically to apply a royalty to Fresenius' post-judgment infringement. The remand did not require, and did not permit, redetermination of the issues that had been finally decided.

The majority attempts to distinguish the *Qualcomm* decision on its facts, stating that there "the judiciary had entered 'a final judgment entitling QUALCOMM to a preference,'" maj. op. 28 n.12, and that "[b]ecause of the finality of the earlier decision. . . the legislation was construed to be inapplicable." *Id.* But the *Qualcomm*

judgment left both the merits of Qualcomm's "pioneer preference" and other "alternative relief" to be decided on remand, 181 F.3d at 1377; this judgment certainly would not be "final" under the majority's standard: The *Qualcomm* judgment did not "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment." Maj. op. 20 (quoting *Mendenhall*, 26 F.3d at 1580). Moreover, the *Qualcomm* judgment left "the scope of relief . . . to be determined." Maj. op. 20. There is no basis in fact or law to hold that our decision in *Fresenius I* is any less final than that considered in *Qualcomm*.

The strained analogy of a PTO reexamination decision to statutory change does not overcome the finality of judgment of issues that had already been finally decided by the court.

## C. The Flawed Reissue Analogy

I comment on the majority's analogy to patent reissue law. The majority states that the reissue statute authorizes the PTO to ignore final judicial rulings, citing the "intervening rights" provision. The majority proposes that since "the reexamination statute provides that reexamined claims 'have the same effect [in pending litigation] as that specified in § 252 of this title for reissued patents.' 35 U.S.C. § 307(b)," this means that PTO reexamination is liberated from the Constitution. Maj. op. 10 (brackets in original).

This theory not only misstates the reexamination statute, but taints the reissue statute. Reexamination section 307(b) states:

> § 307(b). Any proposed amended or new claim determined to be patentable and incorporated into a patent following a reexamination proceeding will have the same effect as that specified in section 252 of this title for reissued patents on the right of any person who made, purchased, or used within

the United States, or imported into the United States, anything patented by such proposed amended or new claim, or who made substantial preparation for the same, prior to issuance of a certificate under the provisions of subsection (a) of this section.

Section 307(b) provides for intervening rights, which arise when there is an "amended or new claim" resulting from the reexamination. In this case, however, there is no amended or new claim. The relevance of the panel majority's argument is obscure, for the intervening rights provision of the reissue statute does not authorize the PTO to review, override, or deny full faith and credit to judicial rulings.

Both reissue and reexamination are remedial in nature, and both protect persons who relied on earlier forms of changed claims. In *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012) the court explained that

claims that emerge from reexamination do not create a new cause of action that did not exist before. We therefore reject Aspex's argument that the issuance of [amended and new claims] had the effect of negating the res judicata effect of the prior litigation [of the original claims].

*Id.* at 1341–42 (internal citations omitted). The "res judicata effect" in *Aspex* tracks the issue preclusion effect in this case. The panel majority's extensive analysis of the reissue statute neglects to mention that the claims here at issue were unchanged during reexamination, and that since 1928 such claims retained their original effect upon reissue of the patent. The proposal that reissue law supports the dominance of a PTO reexamination decision over a prior adjudication in the courts is a needless distraction.

## SUMMARY

The court's ruling that PTO reexamination overrides the prior adjudication of patent validity is contrary to the legislative purposes of reexamination, offensive to principles of litigation finality and repose, and violative of the Constitution. The judicial decision of patent validity is not available for review, revision, or annulment by the PTO. When the issue of patent validity has been litigated and finally decided in the courts, this binds not only other courts, the parties, and the public; it binds the other branches of government. From the court's contrary decision, I respectfully dissent.

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2013, true and correct copies of the foregoing **COMBINED PETITION FOR PANEL REHEARING AND REHEARING EN BANC OF DEFENDANTS-CROSS APPELLANTS BAXTER INTERNATIONAL, INC. AND BAXTER HEALTHCARE CORPORATION** were electronically filed through the Court's ECF system and served via the Court's transmission of the Notice of Docket Activity to all counsel of record, and two courtesy copies of this document will be sent to the party below:

Michael E. Florey
Fish & Richardson P.C.
3300 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
Email: florey@fr.com

I further certify that I will file an original plus eighteen copies of the foregoing with the Clerk of Court by Federal Express to:

Mr. Jan Horbaly
Clerk of Court
United States Court of Appeals for the
Federal Circuit
717 Madison Place, NW
Washington, DC 20439

/s/ Michael J. Abernathy
Michael J. Abernathy